# The Pittsburg, Fort Wayne and Chicago Railway Co. *versus* The Commonwealth.

1. The taxing power rests upon necessity and inheres in every sovereignty. Per PEARSON, P. J.

2. The taxing power is unlimited except by constitutional prohibition; in amount it is co-extensive with the wants of the government. *Id.*

3. It is applicable to all property and rights created or protected by the law. *Id.*

4. It may not be enforced against persons not amenable to or protected by our laws, yet may be against the property or rights coming within the limits of the Commonwealth. *Id.*

5. Taxation is correlative to protection. *Id.*

6. The money of a creditor loaned to a citizen of this state may be taxed here and the tax collected through the debtor. *Id.*

7. A railroad extended through Pennsylvania and other states. The assessment of tax on its debt is to be in proportion to its extent in this state. *Id.*

8. Double taxation is not unlawful in this state. *Id.*

9. Our constitution does not require equality of taxation. *Id.*

10. The officers of a corporation are personally responsible for the tax. *Id.*

11. The Commonwealth can sequester a railroad within her borders till the tax is paid. *Id.*

12. The negotiable character of coupons of a railroad corporation will not exempt them from taxation; every one receiving them was bound to know they were taxable. *Id.*

13. An omission to charge on any particular aspect of the law where it does not necessarily present itself, is not error in the absence of a request to notice it.

14. One object of an exception to a charge is to bring a specific error to the notice of the judge, that he may correct it on the spot before the jury have acted.

15. The practice of excepting to the whole charge without designating a specific error is a bad one, and should be repressed by the lower court.

May 21st 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Dauphin county* : No. 90, to May Term 1870.

This was an appeal by the Pittsburg, Fort Wayne and Chicago Railway Company from the settlement of the accounting officers of the Commonwealth, by which the company were charged with $14,510.11 for tax on interest on the funded debt of the company.

The appeal, &c., was filed March 27th 1868.

The charge of Judge Pearson, which was adopted by the Supreme Court, contains all that is necessary for the understanding of the case. :—

" The Pittsburg, Fort Wayne and Chicago Railway Company was incorporated by the states of Pennsylvania, Ohio, Indiana and Illinois. The road is about 469 miles in length, some 47 miles of which is within the state of Pennsylvania. The average funded debt of the company amounts to some $12,671,000, the most of which is secured by first, second and third mortgages, besides $59,500, a loan made to build a depot at Chicago, the whole bearing interest at the rate of $7\frac{3}{10}$ per cent., payable semiannually, as appears by the returns made by the company to the auditor-general's office. The whole indebtedness is secured by bonds with coupons attached.

" The accounting department of Pennsylvania charged the company with a tax on its interest paid to the bondholders for a fractional portion of the year 1864, and the whole of 1865, 1866 and 1867, amounting to $14,789.01 in all, and deducted therefrom the commission to the treasurer of the corporation, amounting to $278.90, computing the tax according to the supposed length of the road within this state, $\frac{50}{469}$ parts. No exception is taken to the amount, but it is contended that no tax whatever can be imposed on these loans, as the whole road is not situated in Pennsylvania, but in three other states, mainly in Ohio and Indiana, and partly in Illinois; and the company does not know from which of the coupons to make the deduction, and consequently cannot lawfully take it off of the claims of any holder.

" Two questions are presented. First : Can the legislature impose the tax ? and, second : Is it done by our laws ? The power to tax rests upon necessity, and is inherent in every sovereignty. It is unlimited in extent, except by express constitutional prohibition, and in amount is co-extensive with the wants and necessities of the government. It applies to every species of property or rights, either created or protected by the law; and although it may not be imposed upon, or enforced against, the persons of

[Pittsburg, Fort Wayne & Chicago Railway Co. *v.* Commonwealth.]

individuals not amenable to, or protected by, the laws of the state, yet it may against every species of property or rights which come within the limits of the Commonwealth. This corporation derives its franchises, in part, from Pennsylvania legislation; all of its property within the state is protected by our laws, and although the creditors of the company are beyond our borders, yet their debts, and the effects from which they must be paid, the *franchises and corpus* of the railroad, are under state jurisdiction and protection, and the holder of the obligation must depend upon our laws for its collection. What would his debt be worth if he could not look to our laws for its enforcement? And the very property which stands as its security was created, and is upheld, by our authority. We think that it would be impossible to doubt the power of the state to tax the stock of the non-resident corporator in this road, or at least so much of it as is constructed in Pennsylvania, and to enforce payment if necessary by a seizure of the property and franchises of the corporation: and why should not the same right exist against the debts with which the road was built? They equally have and require the protection of our laws, and the principle of taxation is correlative with protection.

"By the 32d section of the Act of 1844, all moneys owing by solvent debtors were subjected to taxation, however the same might be secured, and this even fell on the holder of state bonds and stocks, which tax the state treasurer was required to withhold from the creditor, when paying interest. By the Act of May 1st 1854, Pamph. L. 536, it is declared 'that all bonds and certificates of loans of any railroad company incorporated by this Commonwealth, be and the same shall be liable to taxation for state purposes *only*.' Showing most clearly the legislative intention to relieve those debts from the burden of county and township taxes, but to subject them to that of the Commonwealth. No method was provided for collecting this tax where the creditor resided out of the Commonwealth, until the enactment of the Act of April 30th 1864, the 3d section of which required the president, treasurer, cashier or other officer of any company incorporated by the laws of this state, to deduct the state tax due upon its bonds or indebtedness, and pay over the same to the state treasurer. A similar provision is made as to city or county bonds, by the 4th section of the same act. See Pamph. L. 1864, p. 219. No exception is allowed as to the debts due to non-residents by either of these enactments. Money is quite as likely to be lent to citizens of another state by one of our cities or counties, as to a railroad company; yet it is probable that the duty and obligation of such city or county treasurer to retain the tax was never doubted. [No one can read these various enactments without coming to the conclusion that it was the legislative intention to collect a state tax from all creditors of corporations, whether pri-

vate or municipal, without regard to the residence of the holder of the obligation; and it is equally manifest that this system of retention was designed to meet the case of absentees, as our own citizens were obliged to return their amount of money at interest to the township assessors. If the non-resident holder of such bonds could not be taxed, the most gross frauds would be practised by colorable transfers to persons out of the state, or by handing over the coupons to such for presentation to the treasurers.]

"But why should we, sitting in an inferior court, reason on this subject? Every legal question referred to thus far, has received a judicial construction by the Supreme Court of this state. Maltby *v.* The Reading and Columbia Railroad Co., 2 P. F. Smith 140, decides that [the tax now in controversy is imposed, by the various statutes cited, on corporation loans; is authorized to be retained by the Act of 1864, and must be deducted from the bonds held by non-residents, as well as those residing in the state.] The latter principle had been previously ruled, in effect, in West Chester School District *v.* Darlington, 2 Wright 157.

["It is said, however, that these laws impair the obligation of the contract between the debtor and the creditor. We are unable to see in what particular. All citizens are subject to taxation, either in their persons or their property, or both. Therefore, where they lend money the loan may be taxed, and if the state, by its laws, chooses to make the debtor the collector, he may be ordered to withhold the amount from his obligation. If the creditor is a non-resident of the state, his person cannot be taxed, but his money, lent to our citizens or institutions, may be, on account of the protection furnished to his claim or the property on which it is secured, and the tax be collected through the medium of the debtor. The · laws tax the loan as property found here in Pennsylvania, and impose no heavier duty on it than on like property held by our own citizens.] See Maltby *v.* The Railroad Co., already cited; Hood's Estate, 9 Harris 116.

"We come now to consider another branch of this case. The railroad extending partly through four states, can its bonds be taxed at all? If they can, must they be taxed in full or in the proportion of the length of the road in this state? We have no express Act of Assembly authorizing the tax to be apportioned, yet the unvarying custom of the state officers has measurably established the law against any claim to charge in full, where a large portion of the property is situated beyond our limits. It cannot be pretended that a state can by law impose a tax on that which is entirely beyond its jurisdiction, or on property to which its laws afford no protection. The custom to assess *pro rata*, to the extent of the improvement in the state, has received the sanc-. tion of the court in several cases when applied to the *stock* of corporations, and we can see no reason why the same doctrine

[Pittsburg, Fort Wayne & Chicago Railway Co. v. Commonwealth.]

should not prevail in regard to their bonds. The cases, we think, are strongly analogous. In The Easton Bridge Co. v. Northampton County, 9 Barr 416, Judge Coulter says: 'This state can tax all that is within its bounds and which receives protection from its laws, unless exempted by the Constitution of the United States or of this state.' That was a tax imposed both on the stock of the company and its money at interest. The bridge was incorporated under the laws of Pennsylvania and New Jersey, and extended across the Delaware river; one-half was situated in each state, and the tax was equally apportioned. In The Commonwealth v. The Trenton Delaware Bridge Co., this court held that the state of Pennsylvania could tax only one-half of the capital stock of the corporation, it being created by the laws of both states, and one-half of the bridge being in each. Pennsylvania could tax only the proportion of the property within her borders, as represented by the stock. The principal portion of the stock was owned by citizens of New Jersey, and the business of the company was transacted in that state. The decision was acquiesced in, both by the attorney-general and the corporation. See the case, reported in full in 9 Am. Law Reg. O. S. 298. Again, in the case of The Commonwealth v. The Cleveland, Painesville and Ashtabula Railroad Co., 5 Casey 370, it was held by the Supreme Court that 'the stock of the company was subject to taxation in proportion to the amount *used* in this state.' That would be evidenced by the length of the road in Pennsylvania. Fractions of time have also been recognised, though not mentioned in the statute. See 14 Wright 399.

"We are met here by a decision of the Supreme Court of the United States in the case of Northern Central Railway Company v. Jackson, which very clearly conflicts with all of the cases cited. Jackson sued the railroad company on the coupons due him for interest on his bonds. They were drawn in the usual form, payable to bearer, and the holder was a non-resident alien. The company defended as to the amount of tax paid by it to the Commonwealth, but it was not allowed by the court, which held that there could be no apportionment of the tax; that Pennsylvania undertook to collect taxes from claims beyond her jurisdiction; that if she could tax, Maryland could also, which would lead to double taxation; and as many of the railroads passed through several states, each could impose the same burden, which would be most oppressive. If this case depended on the Constitution or any law of the United States, we should certainly consider ourselves bound by that decision. But as we understand the subject, it must be controlled by Pennsylvania law alone, which the learned judge who delivered the opinion does not seem to comprehend. If it even resulted in double taxation, that has never been considered unlawful in this state. On the contrary it is of frequent oc-

currence. The real and personal property of a corporation may be taxed, although it pays a tax on the stock which purchased it: Lackawanna Iron Company *v.* Luzerne County, 6 Wright 424, 431. See 3 Wright 251; 6 Casey 332; 9 Barr 361. The power of the legislature is as ample to tax twice as to tax once : 6 Casey 332. And it is done daily, as all experience shows : 9 Barr 361.

"Equality of taxation is not required by our Constitution : 7 Harris 258. The stock may be fully taxed to the institution and also to the stockholders, Whitesell *v.* Northampton County, 13 Wright 526, 529, and the stockholder in the corporation of another state is obliged to pay a tax to Pennsylvania on his stock, he being a resident here, although the whole property and stock is subject to taxation in the state of its location : 13 Wright 519.

["In the case reviewed in the Supreme Court of the United States, as in the case now on trial, there was no attempt on the part of Pennsylvania to tax property or rights beyond her jurisdiction, she did not propose to sever the bonds and say this one shall pay a tax to Maryland and that one to Pennsylvania, but she did equal justice to the creditor by saying: You shall pay your *pro rata* of the three-mill tax to us, and no more, rating it according to the length of road in each state. The same is done here. The coupons being payable out of the state, we hold to be unimportant.] The officers of the corporation are held personally responsible for the tax. It can be collected from them individually if they neglect to retain and pay it over. Nor is the state bound to pursue the mortgages to recover. She can seize the road situated within her borders by sequestration, until the debt is fully paid.

["The negotiable character of these coupons will not exempt them from taxation, although they pass from hand to hand like bank notes. Every person receiving one is bound to know that it is taxable by law. The statutes are public, of which all the world must take notice.]

"Although part of these bonds are secured by mortgage, and others are not, yet that has no bearing, for if the mortgages are not protected as to all by our laws, yet the road on which the whole debt is secured is protected, and therefore is taxable. The hardship under which companies labor, situated like the defendant, has been strongly pressed on our consideration. Pennsylvania, through her courts, will compel the corporation to pay the tax, whilst the courts of the United States will oblige it to pay its coupons in full ; thus throwing the burden of taxation on the debtor instead of the creditor, as intended by law. We do not think that this clashing of jurisdiction can be of long continuance. It is a settled principle of Federal jurisprudence, that when the controversy arises on state laws, the United States court will follow the last decision of the court of final resort in the state. We consider

[Pittsburg, Fort Wayne & Chicago Railway Co. v. Commonwealth.]

the points raised here already decided by our Supreme Court. The United States court thought otherwise.   When they are confessedly settled, there can thereafter be no clashing of jurisdiction. Should the Supreme Court of this state adopt our views, the United States judiciary must conform thereto, unless that court departs from its settled rule on the subject, or declares that the debts due to non-residents are protected from taxation by Federal laws, in which case our courts must succumb.

" Should the principle contended for by the defendant prevail, it must debar all taxation on railroad stocks, as well as bonds, where the road extends partly through more than one state, and as nearly one-half of all the railroads in Pennsylvania run a distance into, and often through, other states, Pennsylvania would probably be deprived of a million of dollars per annum in taxes, as now assessed.   Yet that apprehension should not for a moment influence the courts in declaring the law.   We have made our decision irrespective of the consequences.

" The Commonwealth's counsel objects to a deduction of $278.90, commission allowed by the defendant to the treasurer of the corporation, on the ground that he never paid over the money.   No appeal is given by law to the state from the decision of its own officers, and none was taken in this case, so that if an error exists it cannot be corrected.   On the other hand, the length of the defendant's road in Pennsylvania is computed at fifty miles, whereas the evidence shows it is only about forty-seven.   When both errors are corrected there will not be a difference of over eight dollars between them, and that is against the state.   You can therefore treat the settlement as correct, and allow interest on the amount found due the Commonwealth after the expiration of three months from the date thereof, at the rate of six per cent.; this account having been adjusted at the department prior to the passage of the Act of May 1st 1868, changing the rate of interest, and the time from which it is to be computed.   [Your verdict will be rendered for sixteen thousand one hundred forty-nine dollars seventy-four cents and costs of suit.]"

The verdict was for the Commonwealth for $16,149.74.

The company defendants took out a writ of error, and assigned for error the parts of the charge in brackets.

*J. W. Simonton*, for plaintiffs in error, and *F. Carroll Brewster*, Attorney-General, for the Commonwealth, submitted substantially the same arguments as in The Delaware, Lackawanna and Western Railroad Co. v. Commonwealth (àntea p. 64).

The opinion of the court was delivered, July 7th 1870, by

THOMPSON, C. J.—We have examined with care the charge of the court below in the case, and think it needs no discussion at

our hands.   We regard it as free from error, and a satisfactory explanation of the various Acts of Assembly and principles of law necessary to a proper decision of the case.

The case of Maltby *v.* the Reading Railroad Co. rules most of the positions assumed as errors, and fully sustains the learned judge in his charge.

That case, so far as the taxation of the capital of foreign residents is concerned, was substantially sustained by and is in accordance with The Borough of Carlisle *v.* Marshall, 12 Casey 397, West Chester *v.* Darlington, 2 Wright 157, and Lewis *v.* The County of Chester, 10 P. F. Smith 325.

But as we are entirely satisfied with the opinion of the learned judge on all the questions raised below in the case and presented for his consideration, we will add nothing, but affirm the judgment for the reasons so well given therein.   The question raised in the court upon the Act of 30th April 1864 seems not to have been suggested in the court below.   It was not noticed in the charge, nor was the attention of the court called to it; all reference to it was omitted.

We have often held that an omission to charge on any particular aspect of the law of a case where it does not necessarily present itself, is not error in the absence of a request to notice it: Mullen *v.* Wilson, 8 Wright 413; Garrett *v.* Gonter, Id. 143; Walter *v.* Humbert, 5 P. F. Smith 407.   That is the case here. No point was put to the court on the subject, nor did any plea in the case raise it.

The omission was therefore not the subject of error; nor indeed is there any assignment of error which covers ·it.   One rule of court is, " that the counsel for plaintiff in error shall, on or before the third day of the term to which the writ is returnable, specify in writing the particular errors which he assigns."   That rule has not been followed even if the omission referred to had been the subject of error.   It may have been an after-thought which the allowance of an exception to the whole charge as if every word of it were error, so readily allows.   An exception to a charge has a twofold purpose to subserve.   One to bring directly to the mind of the judge the specific error he is supposed to have committed, so that he may have the opportunity to correct it, if it exist, on the spot before the jury shall have acted.   The other is that if no correction be made of the error thus pointed out it may hereafter be brought before the court of review.

It is apparent that there is no chance for the correction by the court of any specific error, where every portion of the charge is excepted to as error.   A general exception discloses no specific errors.   The practice is a bad one, and the Court of Common Pleas ought to repress it.   I do not know that it prevails elsewhere, if it does, it is to a very limited extent in this state.

Judgment affirmed.