COMMONWEALTH v. IRON CITY BREWING CO.

COMMONWEALTH v. LARGE DISTILLING CO.

COMMONWEALTH v. JOSEPH EINSTEIN & CO.

COMMONWEALTH v. MARY E. POLLARD.

COMMONWEALTH v. JAMES K. LANAHAN.

APPEALS BY COMMONWEALTH FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 4, 1891—Decided January 4, 1892.

Brewers, distillers, bottlers, and wholesale and retail dealers in liquors, are not assessable by the mercantile appraiser as venders of merchandise; the license acts of May 13, 1887, P. L. 108; May 24, 1887, P. L. 194; and June 9, 1891, P. L. 257, having superseded the old system of mercantile assessments, as to all such persons.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

---

* This specification was of course insufficient.

Statement of Facts.

Nos. 253, 257 October Term 1891, Sup. Ct.; court below, Nos. 342, 408, 392, 429, 450 July Term 1891, C. P. No. 2.

To the numbers stated of the court below, the Iron City Brewing Company, the Large Distilling Company, Joseph Einstein & Co., Mary E. Pollard, and James K. Lanahan entered, by allowance of said court, appeals from assessments of mercantile license tax, made against them respectively by the mercantile appraiser of Allegheny county, for the year commencing May 1, 1891 : See § 1, act of April 11, 1862, P. L. 492.

The acts of assembly relating to mercantile licenses under which the assessments were made, are the following : Act of April 7, 1830, P. L. 387 ; act of May 4, 1841, P. L. 307 ; act of April 16, 1845, P. L. 532 ; act of April 22, 1846, P. L. 486 ; act of April 10, 1849, P. L. 570.*

At the hearings of these cases, the following facts were made to appear, and were undisputed :

The Iron City Brewing Co. was a corporation engaged in the business of manufacturing and selling malt and brewed liquors, in the city of Pittsburgh, under a license granted to it by the Court of Quarter Sessions of Allegheny county, selling no goods and merchandise whatever except the products of its brewery.   The Large Distilling Co. was a partnership having a distillery in Jefferson township, Allegheny county, and operating under a license granted by said Court of Quarter Sessions, selling only the spirituous liquors produced thereat. Einstein & Co., Mary E. Pollard, and James K. Lanahan were all engaged in carrying on business in the city of Pittsburgh, under licenses granted by said Court of Quarter Sessions ; Einstein & Co. as bottlers of malt and brewed liquors, Mary E. Pollard as a wholesale liquor dealer, and James K. Lanahan as retailer in the St. James Hotel, kept by him.   Neither of them was engaged in any other business than those covered by their respective licenses, except Mary E. Pollard, who sold mineral waters, flasks, cooperage and cigars, her business in these articles, however, not exceeding five thousand dollars per annum.

The assessments made by the mercantile appraiser classified the defendants as follows :

* See Commonwealth v. Teller, 144 Pa. 545.

Opinion of Court below.

| | |
|---|---|
| Iron City Brewing Co., . . . . | Third class. |
| Large Distilling Co., . . . . | Eighth class. |
| Einstein & Co., . . . . . | Twelfth class. |
| Mary E. Pollard, . . . . | Third class. |
| James K. Lanahan, . . . . . | Ninth class. |

After argument, the court, WHITE, J., filed the following opinion :

The sale of liquors by retail has always been limited in this state to those who kept inns or taverns for the accommodation of strangers and travelers. The only exceptions were, in Philadelphia, by the act of April 20, 1858, and in Allegheny county, by the act of April 3, 1872, drinking saloons were authorized to be licensed. In all the acts on the subject, March 8, 1815, April 7, 1830, March 11, 1834, March 31, 1856, April 20, 1858, and April 12, 1875, the amount of license was regulated by the annual sales or the rental value of the property. The act of May 13, 1887, was the first that fixed a definite and uniform rate for a city, borough or township. In all the acts from 1815 to 1887, except in Philadelphia and Allegheny counties, by the acts of 1856, 1858 and 1872, licenses were to be granted by the Court of Quarter Sessions. The various acts made different classifications of inns, taverns and hotels, and fixed different rates for licenses for the different classes. In many of these acts, there was no express repeal of former acts. Yet, being on the same subject and generally increasing the license fee, the later act superseded the former one.

The acts of May 4, 1841, April 22, 1846, and April 10, 1849, do not include inns and taverns, or retail dealers, leaving them under the license fees fixed by the act of March 11, 1834. As the act of May 13, 1887, expressly includes them, and fixes the license fee to be paid, it is all the license fee or tax the retailer of liquors is required to pay. If he deals in any other goods, wares or merchandise, he may be liable to pay a mercantile tax on them. That, however, should appear on the assessment of the mercantile appraiser. In one case before us, that of James K. Lanahan, it appears to be an assessment upon his license as a hotel-keeper.

A tax, or "duty," as it was called, was imposed upon "the retailers of foreign merchandise," by act of March 4, 1824, and

extended to " wholesale dealers and retail dealers in merchandise," by act of April 7, 1830. These provisions were re-enacted and enlarged by act of May 4, 1841, entitled " An Act to provide revenue to meet the demands on the treasury, and for other purposes," and " extended and applied to all persons engaged in the selling or vending of goods, wares, merchandise, commodities, or effects of whatsoever kind or nature." It divided such venders into fourteen classes, according to amounts of annual sales. The language was broad enough to include venders of liquors, and did, because " the venders of wines and distilled liquors " were required to pay fifty per cent more than other venders of the same class. These acts, however, included only foreign merchandise. But the act of April 22, 1846, entitled " An Act to provide for the reduction of the public debt," extended the provisions to " all dealers in goods, wares and merchandise, the growth, product and manufacture of the United States." It also provided for the appointment of a mercantile appraiser in each county of the state.

The mercantile tax is now assessed by the mercantile appraiser, in pursuance of these two acts of 1841 and 1846, as extended and modified by the act of April 10, 1849. This latter act included beer-houses, eating-houses, restaurants and oyster cellars, patent medicines, and distillers and brewers, and provided for their classification according to the amount of annual sales. The act was entitled " An Act to create a sinking fund, and to provide for the gradual and certain extinguishment of the debt of the commonwealth." It was the first that imposed a tax upon distillers and brewers. Thus far, bottlers were not expressly mentioned in the acts, but doubtless they would be included in the general terms of the acts of 1841 and 1846.

The act of 1849 was followed by the act of March 31, 1856, entitled " An Act to regulate the sale of intoxicating liquors." It applied to the whole state, with special provisions for a board of licensers in Philadelphia and Allegheny counties. It classified breweries and distilleries, wholesale dealers, hotels, inns and taverns, and eating-houses, and fixed the license fees according to annual sales, or the yearly rental. It also provided that persons " pursuing exclusively the business of bottlers of cider, perry, ale, porter or beer," need not take out a license.

It also repealed " all other laws or parts of laws inconsistent" with the provisions of this act.

The supplement to this act, April 20, 1858, continued the tax upon the same classes of business, modified some of the provisions, changed the classifications and license fees, and had special provisions for Philadelphia and Allegheny counties, but contained nothing specially bearing upon the questions involved in these appeals. The local act for Allegheny county, of April 3, 1872, was repealed, except as to the mode of granting licenses, by the general act of April 12, 1875, which regulated the mode of granting licenses, and fixed the license fee according to the yearly sales, but provided that no license for hotel, inn or tavern should be less than fifty dollars, and for bottlers not less than fifty dollars.

The acts of May 13, 1887, and May 24, 1887, embrace all dealers in intoxicating liquors, hotels, inns and taverns, retailers, distillers, brewers, wholesale dealers and bottlers, and fix the license fee to be paid by each.

Without referring to other acts, this general review of legislation on the subject shows that the policy of the state has been to make dealers in the manufacture and sale of intoxicating liquors pay an annual tax to the state, like all other dealers in goods, wares and merchandise, and generally a higher rate. Whether called a " duty," or " tax," or " rate," or a license " fee," it means the same thing. Each subsequent legislation, changing the classification and rate or amount to be paid, superseded the prior classification and rate. There is nothing in any of the various acts on the subject, to indicate that venders of intoxicating liquors should pay two taxes, or one mercantile tax and one license fee. No doubt the legislature has power to impose such a burden; but the intention to do so should be clearly manifested. We hold, therefore, that the license fee required to be paid by distillers, brewers, wholesale dealers and bottlers, under the act of May 24, 1887, is all they are required to pay; they are not liable to a mercantile tax, in addition thereto, under the acts of May 4, 1841, and April 22, 1846. This, of course, applies to them only as dealers in intoxicating liquors. As dealers in any other goods, wares or merchandise, they may be liable to the mercantile tax.

The appeals in these five cases are sustained, and the assessments set aside.

—Thereupon, the commonwealth took these appeals, specifying, in the cases against the Iron City Brewing Company and the Large Distilling Company, that the court erred :

In sustaining the appeals of said defendants from the asse ments made by the mercantile appraiser ; in holding that said defendants were not liable to pay a mercantile license tax to the commonwealth, and in not entering judgments in favor of the commonwealth for the amounts of said assessments.

And specifying, in the other cases, that the court erred :

1. In finding that a wholesale dealer in intoxicating liquors is not required to pay a mercantile license tax, under the acts of May 4, 1841, P. L. 307, and April 22, 1846, P. L. 487.

2. In making a similar finding as to bottlers of vinous, etc., liquors.

3. In making a similar finding as to retailers of intoxicating liquors.

4. In sustaining the appeal from the assessment in each of said cases.

5. In not dismissing each of said appeals.

*Mr. Robert S. Frazer* and *Mr. William M. Hall, Jr.*, for the Commonwealth :

There is no conflict whatever between the acts of May 4, 1841, P. L. 307, and April 22, 1846, P. L. 487, and the acts of May 13, 1887, P. L. 108, May 24, 1887, P. L. 194, and June 9, 1891, P. L. 257. The former acts impose a business tax, and the acts of 1887 and 1891 provide for payment of a license fee. The two are very different things: Cooley on Taxation, 385, 406 ; Wilmington v. Roby, 8 Ired. 250 ; Wilmington v. Patterson, 8 Jones (L.) 182 ; Baker v. Panola Co., 30 Tex. 86 ; Frankford St. R. Co. v. Philadelphia, 58 Pa. 119 ; Johnson v. Philadelphia, 60 Pa. 445 ; Addler v. Whitebeck, 44 Ohio St. 558 ; Youngblood v. Sexton, 32 Mich. 406 (20 Am. Rep. 654) ; Chilvens v. Pepple, 11 Mich. 43 ; Allentown v. Gross, 132 Pa. 322 ; Commonwealth v. Reyburg, 122 Pa. 304 ; Drexel v. Commonwealth, 46 Pa. 41. The abandonment of the taxing power is not to be presumed : 2 Pars. on Cont., 527 ; Easton Bank v. Commonwealth, 10 Pa. 442 ; Providence Bank v. Billings, 4 Pet. 514 ; Phila. etc. R. Co. v. Maryland, 10 How. 376.

*Mr. William S. Pier* (with him *Mr. William R. Blair, Mr. John S. Robb, Mr. James Fitzsimmons, Mr. Josiah Cohen, Mr. Abraham Israel, Mr. D. T. Watson* and *Mr. G. P. Graver*), for the appellees other than J. K. Lanahan ; *Mr. Charles P. Orr* (with him *Mr. Thomas C. Lazear*), for James K. Lanahan.

### BREWING CO. AND DISTILLING CO.

OPINION, MR. JUSTICE WILLIAMS :

The act of 1891 provides, inter alia, that all brewers, distillers, rectifiers, and compounders shall pay for each separate brewery, distillery, rectifying or compounding establishment an annual license. In cities of the second class, this is fixed at one thousand dollars per annum. The license is granted by the Court of Quarter Sessions of the proper county, and until it is granted the business cannot be entered upon. The former systems under which licenses were granted by the county treasurer or commissioners, or a board of licensers, have been superseded ; and the system known as that of " high license," provided by the acts of 1887 and 1891, is the only one now in force in this state. Under this system, all branches of the manufacture of, and all sorts of traffic in intoxicating liquors are brought under the control of police legislation. The whole business is forbidden to the public under severe penalties. It can be conducted only under the authority of a license granted by the Quarter Sessions, and revocable at any time by the same court for any violation of the requirements of the liquor laws.

The appellees are manufacturers. They have received and paid for a license for the year. Their places of business, respectively, are in Pittsburgh, which is a city of the second class. An effort is now made to assess them with a license fee under the old system, which provided for the assessment of brewers, distillers, and dealers, according to the amounts of their annual sales, by the mercantile appraiser, and for the payment of the license so paid directly to the county treasurer, whose receipt gave the necessary authority to enter upon the business. But, as we have seen, all this machinery has been replaced by recent legislation. The mercantile appraiser no longer fixes the amount of the license. This is done by the act of 1891. The treasurer's receipt confers no right to enter upon any branch of the liquor business. This right can be

conferred by the Court of Quarter Sessions only.    The classifi-
cation of the appellees by the mercantile appraiser is no longer
required.    It is a nullity ; the assessment of a license fee upon
them under that classification is unauthorized.    The court be-
low reached a correct conclusion, and

                    The judgment is affirmed.


        EINSTEIN & CO., POLLARD, AND LANAHAN.

    OPINION, MR. JUSTICE WILLIAMS :

    Capital employed in trade has never been taxed in this state
like that invested in houses, lands, or interest-bearing securi-
ties.    The legislature, up to and including the year 1830, at-
tempted no more than the imposition of a moderate mercantile
tax or license upon dealers in foreign merchandise and foreign
wines and liquors.    In 1841, for the first time, this tax was ex-
tended to all merchants, whether dealing in foreign or domes-
tic merchandise, or foreign or domestic liquors.    This mercantile
tax was assessed by the mercantile appraiser and paid to the
county treasurer.    It was graduated with reference to the vol-
ume of business done.    The treasurer's receipt authorized the
dealer to conduct business for one year, and was called a license.
If the dealer's trade was in liquors, he was forbidden to sell in
less quantities than one quart.    The sale by the quart and
larger measure was called a wholesale trade, to distinguish it
from sales by the drink, which were confined exclusively to
keepers of hotels, restaurants, and eating-houses.    Licenses to
the latter class of dealers were granted only by the courts of
Quarter Sessions.    To the former they were issued as a matter
of course, upon the payment of the mercantile tax.    As pop-
ulation increased, and the evils arising from the intemperate
use of liquors engaged the attention of the public, restrictive
legislation was employed.

    The whole business came gradually to be regarded as a proper
subject for the exercise of the police power.    The trade in liquors
as an article of merchandise was forbidden to the public.    Its
control was confided to the courts.    This system of legislation
slowly developed into what is known as the high license law,
under which all branches of the traffic are forbidden except as
authorized by the Quarter Sessions, on application made and
heard in conformity with the requirements of that law.    The

act of 1887 relating to retailers, and that of 1891 relating to wholesalers, supersede the old systems altogether, and fix the prices to be paid for a license independently of all former legislation. The first section of the act of 1891 provides " that all wholesale dealers, . . . . storekeepers, and agents having stores or offices within this commonwealth . . . . shall pay for each separate store . . . . or agency an annual license." This, in cities of the first and second class, is one thousand dollars per annum. The business is thus distinguished from all others by being forbidden to the public, and open only to those whose applications pass the scrutiny of the courts ; and to those only upon the payment of a large sum, and the giving of good security for the faithful observance of the laws regulating and restricting the traffic. We think it is clear that the act of 1891 furnishes the only method by which a liquor merchant can obtain a license, and provides the only existing standard by which the price of his license can be fixed. The conclusion reached by the learned judge of the court below was right, and

The judgment is now affirmed.