Puntureri *v.* Pittsburgh School District, Appellant.

Argued May 24, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Mortimer B. Lesher,* with him *N. R. Criss,* for appellant.

*Mead J. Mulvihill,* with him *George F. P. Langfitt* and *Mulvihill, Gollmar, Herron & Grier,* for appellee.

*C. Brewster Rhoads,* with him *Donald McDonald, Stephen T. Dean* and *Edward B. Soken,* for School District of Philadelphia, amicus curiæ.

OPINION BY MR. JUSTICE HORACE STERN, July 6, 1948:

The Act of June 20, 1947, P. L. 745, section 2, provides as follows: "For the year one thousand nine hundred forty-eight and annually thereafter, every school district of the first class shall issue mercantile licenses and levy and collect an annual mercantile license tax in the manner and at the rates hereinafter set forth. . . . The license fees, taxes and penalties collected under the provisions of this act, shall be used by every such school district for general public school purposes."

Section 3 provides: "Beginning in the year one thousand nine hundred forty-eight, and annually thereafter, every person desiring to continue to engage in, or hereafter to begin to engage in, the business of wholesale or retail vendor of, or dealer in, goods, wares and merchandise, broker, conducting a restaurant or other place where food, drink or refreshments are sold, or place of amusement in a school district of the first class, shall on or before the first day of January of each license year, or prior to commencing business in any such license year, procure a mercantile license for his place of business, . . . in the school district from the receiver of school taxes or school treasurer, who shall issue the same upon the payment of a fee of two dollars ($2) for a wholesale license or a retail license, and four dollars ($4) for a wholesale and retail license for his place of business, . . . in the school district for each license year. . . ."

Section 4 provides: "Every person engaging in any of the following occupations or businesses in any school district of the first class shall pay an annual mercantile license tax at the rate set forth: . . . (2) retail vendors, or dealers in goods, wares and merchandise; all persons engaged in conducting restaurants or other places where food, drink or refreshments are sold, and all persons conducting places of amusement, at the rate of one (1) mill on each dollar of the volume of the annual gross business transacted by him; . . ."

The question here involved is whether plaintiff, who conducts in the Pittsburgh School District, which is a school district of the first class, a restaurant where food, drink and refreshments are sold, is relieved from the payment of the mercantile license tax thus imposed, merely because, in connection with his restaurant business, he holds a retail liquor license issued by the Pennsylvania Liquor Control Board under the Act of November 29, 1933, Spec. Sess., P. L. 15, and pays the prescribed annual license fee therefor to the Board.

Plaintiff filed a bill in equity to restrain the School District of Pittsburgh from attempting to collect the mercantile license tax from him, on the ground that the Act of 1947 was not intended to apply to the proprietors of restaurants who hold liquor licenses. The court entered a decree granting the injunction and the School District appeals.

Plaintiff contends that if the Act were construed to include his business he would be subjected thereby to double taxation. While this, of course, should be taken into consideration in determining the likely intention of the legislature, there is no constitutional objection to double taxation, the power of the legislature being "as ample to tax twice as to tax once": *Pittsburgh, Fort Wayne & Chicago Ry. Co. v. Commonwealth*, 66 Pa. 73, 78; *Commonwealth v. Lehigh Coal & Navigation Co.*, 162 Pa. 603, 610, 29 A. 664, 665; *Commonwealth v. Harrisburg Light & Power Co.*, 284 Pa. 175, 178, 130 A. 412; *Baltimore & Philadelphia Steamboat Co.'s Appeal*, 302 Pa. 364, 367, 153 A. 559, 560. As a matter of fact there is nothing in common between a liquor license fee and a mercantile license tax and they do not in any sense duplicate one another. The former, which results from the necessity of policing a business requiring public supervision, is a flat charge for the privilege of dealing in intoxicating liquors; the mercantile license tax, on the other hand, which is imposed solely for revenue purposes, is a tax on the privilege of selling goods and merchandise of any kind or nature whatsoever, and, unlike a liquor license fee, is measured by the gross volume of business transacted annually: *Commonwealth v. Harrisburg Light & Power Co.*, 284 Pa. 175, 178, 130 A. 412, 413; *Commonwealth v. Globe Furnishing Co.*, 324 Pa. 180, 183, 188 A. 170, 172; *Blauner's, Inc. v. Philadelphia*, 330 Pa. 340, 346, 198 A. 889, 891, 892; *Commonwealth v. McKinley-Gregg Automobile Co.*, 345 Pa. 544, 546, 28 A. 2d 919, 920; *Federal Drug Co. v. Pittsburgh*, 358 Pa.

454, 457, 57 A. 2d 849, 850; *Beaver County Cooperative Association's Appeal*, 118 Pa. Superior Ct. 305, 311, 180 A. 98, 100. A dealer in intoxicating liquors really enjoys two privileges,—one, which he shares in common with *every* vendor, of engaging in the business of selling; for this he is required to pay, like all others, a mercantile license tax; another, which is granted to him specially, of dealing in intoxicating liquors, a business over which the State is compelled to exercise regulation and control; for this he is required, therefore, to pay a special license fee.

Plaintiff argues that the sale of liquor has never been regarded as a mercantile pursuit but has always been governed by separate legislation. He relies largely upon the decision in *Commonwealth v. Iron City Brewing Co.*, 146 Pa. 642, 23 A. 384. That case held that the effect of the liquor license Acts of May 13, 1887, P. L. 108, May 24, 1887, P. L. 194 and June 9, 1891, P. L. 257, which established the so-called "high license" system, was to make inapplicable to dealers in intoxicating liquors the then existing mercantile license taxes prescribed by the Acts of May 4, 1841, P. L. 307 and April 22, 1846, P. L. 486. In considering, however, the relevancy of that decision to the present question there is this important difference to be noted, namely, that *there* the liquor legislation *followed* in point of time the mercantile tax legislation and consequently superseded it so far as there was any inconsistency in their respective provisions, whereas in the present case the situation is reversed because the Pennsylvania Liquor Control Act of 1933 *preceded* the mercantile license tax Act of 1947, so that the latter would control if there were any question of conflict or overlapping between them. It may be added that we are not dealing here, as in the *Iron City Brewing Company* case, with saloons of the type which then existed, but with restaurants which enjoy liquor

licenses only in connection with, and presumably incidental to, the sale of food to their patrons.*

The real and, indeed, the sole question here involved comes down to this: Does the phraseology of the Act of 1947 clearly and unequivocally indicate an intention on the part of the legislature that the tax thereby imposed is to be paid by operators of restaurants holding liquor licenses the same as by persons conducting any other business enterprises? In our opinion the statute plainly manifests such an intention. It provides that such payment shall be made by vendors of, or dealers in, "goods, wares and merchandise", which is language certainly broad and comprehensive enough to cover vendors of intoxicating liquors: *Ellis & Connor v. Commonwealth,* 186 Ky. 494, 217 S. W. 368; *Bridges v. State,* 37 Ark. 224; *McKeown v. State,* 197 Ark. 454, 124 S. W. 2d 19; *Bookbinder v. United States,* 287 Fed. 790; *Dickerson v. United States,* 20 Fed. 2d 901; *Callahan v. United States,* 53 Fed. 2d 467; see *Yohe v. Robertson,* 2 Wharton 155, 162. Moreover, in the added phrase: "persons engaged in conducting restaurants or other places where food, drink or refreshments are sold", the word "drink", both as used in ordinary speech and as defined in standard dictionaries, certainly embraces "intoxicating liquor" as one of the principal meanings, if indeed not the chief meaning, to be ascribed to it.

Having no doubt, therefore, but that the legislature intended that the tax imposed by the Act of June 20,

---

* Incidentally, it may be pointed out that even in the *Iron City Brewing Company* case it was stated (p. 646) that the exemption, there proclaimed, from the mercantile license tax applied only to persons insofar as they dealt in intoxicating liquors and not in other goods, wares or merchandise. In the present case the injunction issued by the court below would relieve the operator of a restaurant holding a liquor license from the payment of the mercantile license tax even in respect to the sales of food and other items not in any way dependent on the liquor license.

1947, P. L. 745, should apply to the gross sales of all food, drink and refreshments by persons conducting restaurants, whether or not they possess retail liquor licenses in connection therewith, we are of opinion that the court below erred in holding to the contrary.

Decree reversed, plaintiff to pay the costs.