## Auman, Inc., et al. v. City of Reading et al.

*George B. Balmer*, for plaintiffs.

*C. Wilson Austin*, city solicitor, for defendants.

MAYS, P. J., September 19, 1949.—Plaintiffs aver that they are not subject to ordinance no. 46, enacted by the Council of the City of Reading under the authority vested in it by the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1, and ask for an injunction restraining defendants from enforcing or attempting to enforce the provisions of the ordinance.

The answer, inter alia, avers that plaintiffs are subject to the provisions of the ordinance and that the tax imposed by the ordinance upon plaintiffs is legal and under full warrant and authority of law.

## Findings of Fact

1. Plaintiffs, Theo. C. Auman, Inc., and Francis F. Seidel, Inc., are corporations organized and existing under the laws of the Commonwealth of Pennsylvania with their respective principal offices in the City of Reading, County of Berks and Commonwealth of Pennsylvania.

2. Plaintiff, Calvin E. Seidel & Sons, is a partnership consisting of Calvin E. Seidel, Sr., Calvin E. Seidel, Jr. and Homer G. Seidel, and is located in the City of Reading, County of Berks and Commonwealth of Pennsylvania.

3. Plaintiffs, John R. Dougherty, John P. Feeney, Edmund F. Gallman, Clarence Gibson, John H. Henninger, Leon B. Kopicki, N. George Lampros, I. Parker Miller, Stokes Stitt, and Francis J. Whelan are all individuals residing in the City of Reading, County of Berks and Commonwealth of Pennsylvania.

4. All plaintiffs are engaged in the profession of undertaking.

5. Defendant, City of Reading, is a duly organized and existing municipal corporation of the third class of the Commonwealth of Pennsylvania.

6. Defendant, John L. Hoch, is the treasurer of the City of Reading, County of Berks and Commonwealth of Pennsylvania.

7. The City of Reading by the council thereof did on November 24, 1948, enact ordinance no. 46 entitled:

"Providing revenue for the City of Reading by imposing a mercantile license tax on persons engaging in certain occupations and businesses therein; providing for its levy and collection and for the issuance of mer-

cantile licenses; and conferring and imposing powers and duties on the Treasurer of the City of Reading, and imposing penalties."

8. Each plaintiff is duly licensed by the Commonwealth of Pennsylvania as undertaker according to the Act of June 10, 1931, P. L. 485, and pays to the Commonwealth an annual license fee to carry on the profession of undertaking.

9. Plaintiffs sell tangible personal property consisting of caskets, shrouds, suits and other clothing, slumber robes, and various other paraphernalia according to the wishes of their various customers when a funeral is ordered for them.

### Discussion

Plaintiffs are licensed under the Act of June 10, 1931, P. L. 485, 63 PS §478-a et seq. The definition of the word "undertaker" under this act says that it shall include "any person engaged in the business or profession of undertaking, or the care, embalming, disposition or burial of the bodies of deceased persons. . . ." It is to be noticed that there is not a single word in the act regulating or licensing or controlling in any manner or way the sale at wholesale or retail, of caskets, clothing, shrouds, or any of the goods and merchandise sold by undertakers.

Defendants state: "As to the professional or personal services rendered by plaintiffs in the conducting of funerals, defendants are not attempting to collect any tax." They, however, draw a distinction between the services rendered under the license and the goods sold by the undertaker. "As to the former, his license exempts him; as to the latter, he is in the same general position as any other merchant or dealer." There is such a distinction. The Supreme Court has so ruled. In Commonwealth v. Dinnien, 320 Pa. 257, the court said, at page 258: "It is not suggested that any tax is

due upon the moneys received by appellant for professional or personal services rendered in the conduct of funerals." Then follows the ruling that undertakers were liable and subject to the State mercantile license tax as retail dealers or vendors in goods, wares and merchandise, but were not taxable upon any moneys received for their professional or personal services.

Plaintiffs rely upon Pittburgh Milk Co. v. City of Pittsburgh et al., 360 Pa. 360 (1948). The words of the licenses in question are different. The only thing that was done by the milk dealers in the exercise of the privilege granted under the license is the sale of milk or milk products.

That there is a clear distinction between the incidental sale of goods not covered by license and the acts done, or sales made under the exercise of the privilege of a State license, is recognized. In the case of Puntureri v. Pittsburgh School District, 359 Pa. 596, 601, there is nothing in the testimony that supports the conclusion that plaintiff's professional license has any legal connection with the business of selling suits and shrouds, etc. How far do plaintiffs' licenses extend? To what degree do they limit the enforcement of a local revenue tax? In Commonwealth v. Dinnien, supra, the Supreme Court said that the license did not extend to the sale of goods, wares and merchandise.

Commonwealth v. Miller, 337 Pa. 246, we submit, even more clearly supports our conclusions. In that case, a licensed optometrist appealed from the assessment of a mercantile license tax levied against him to the extent of the volume of his business represented by the sale of glasses. The facts were that the optometrist purchased the glasses, that he prescribed for his patients from a manufacturing optician and added the cost in his bill for professional services, and that his total charge included a profit on the glasses thus purchased and sold to his patients. The license extended to

the optometrist was for "the employment of any means, other than the use of drugs, for the measurement of the powers of vision and the adaptation of lenses for the correction and aid of the vision of human beings." The court, page 247, said: "This should make it clear that the sale of glasses is no part of the professional services of an optometrist." We will not repeat the discussion by Justice Drew in this case, but submit that what is therein set forth is a complete and full answer to the contention of plaintiffs that, for instance, shrouds, shoes and suits and even coffins, are not sales contemplated within the mercantile tax ordinance.

Under these authorities, we must conclude that plaintiffs are subject to the mercantile tax levies of the City of Reading on the gross annual volume of their business, excluding therefrom the charges for their professional services.

*Conclusion of Law*

1. The bill is dismissed.
2. Plaintiffs are to pay the costs of the proceedings.