348 A.2d 113

**ESTATE of John Evans ROSE, Deceased.**

**Appeal of COMMONWEALTH of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued March 10, 1975.

Decided Nov. 26, 1975.

54

Pomeroy, J., filed dissenting opinion in which Eagen, J., joined.

Israel Packel, Atty. Gen., John M. Duff, Deputy Atty. Gen., Pittsburgh, for appellant.

Roger Curran, Robert Y. Kopf, Jr., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

The executors of this estate petitioned the Orphans' Court Division to reduce the appraisement of certain assets made by the Commonwealth for purposes of imposing its transfer inheritance tax. The auditing judge sustained the taxpayers' position at a hearing held at the audit of the executors' account. 24 Fiduc.Rep. 352 (C.P. Allegheny, 1974). Exceptions having been dismissed by the court en banc, the Commonwealth appealed.[1]

The case was tried on an agreed stipulation of facts which can be fairly summarized as follows.

1. Jurisdiction is in this Court by virtue of Act of 1970, July 31, P.L. 673, article II, § 202(3), 17 P.S. § 211.202(3) (Cum.Supp. 1975–6).

John Evans Rose died on March 15, 1972. On or about May 18, 1973, his two sons, as executors, filed the Pennsylvania inheritance tax return for the estate. On November 14, 1973, the Pennsylvania Department of Revenue submitted to the executors, appellees herein, its Notice of Filing Appraisement. The appraiser for the Commonwealth increased the valuation of two items which were included on the inheritance tax return, and included a third item which the executors had omitted. The first item reappraised was the decedent's undistributed share of partnership profits from his law firm. The Commonwealth's appraisement was $35,501.54. Appellees assert that the true value of the asset for Pennsylvania inheritance tax purposes is $22,799.00. The difference in valuation accurately reflects the amount of federal and state income tax which was properly paid on this item by the Estate since the item was "income in respect of a decedent," which had accrued to the decedent, but on which no income tax had been paid by the decedent because the decedent was a cash basis taxpayer.

The second item reappraised was the decedent's right to receive proceeds from the sale of 200 shares of common stock of Joy Manufacturing Company from the brokerage house of Parker/Hunter, Inc., which proceeds were also stipulated as "income in respect of a decedent." The executors valued this item at $12,734.85 and the Commonwealth appraised the item at $14,083.86. Again, the differential was the amount of federal and state income tax which the executors paid on the item.

The third item under contention is the amount of $1,635.68 representing post-mortem dividends, accumulated dividends, and returns of unearned premiums arising from several insurance policies on decedent's life which benefits were not listed by the executors as assets of the decedent's taxable estate. The Commonwealth asserts that these items are taxable assets. Appellees insist that these assets are not taxable for Pennsylvania in-

heritance tax purposes because they are proceeds of insurance on the life of decedent which were payable directly to beneficiaries other than decedent's estate, and as such, they are specifically exempted from inheritance tax by the Inheritance and Estate Tax Act of 1961, June 15, P.L. 373, article III, § 303, 72 P.S. § 2485–303.

We affirm that portion of the lower court's decree which allowed a devaluation to reflect income taxes paid but remand that portion of the decree which determined that the additional insurance benefits were "proceeds of insurance."

I

■ The auditing judge ruled that the value of decedent's accrued income items (the undistributed share of partnership profits and the right to proceeds from the sale of stock) should reflect the deferred payment of federal and Pennsylvania income taxes payable in these accrued income items. The opinion and the order below relied on the decision in *Tench Estate*, 23 Fiduc.Rep. 478 (C.P.Allegheny, 1973) [2] which was never appealed by the Commonwealth. In *Tench*, the decedent owned a one-third interest in a partnership through which the payments on accounts receivable flowed. As in the present case, this accrued item represented "income in respect of a decedent" for federal income tax purposes. Int.Rev. Code of 1954, § 691.[3] On such items of income, the es-

2. This case has been criticized in Fiduciary Review, September, 1973.

3. Neither in section 691 nor elsewhere in the Internal Revenue Code is the term "income in respect of a decedent" defined. Generally, however, the term may be defined as a right to income that the decedent owned at his death but which, under his method of accounting, was not includable in his final income tax return. Typically, it includes any accrued income to date of death for a cash basis decedent/taxpayer. Richman, *Income in Respect of a Decedent Can Take Many Forms: Some Planning is Possible*, 28 J.Tax 202 (1968).

"Income in respect of a decedent" is included in the decedent's estate tax return and the income tax return of the estate or bene-

tate or beneficiary is liable to pay federal income tax. The *Tench* court reasoned that the asset contained in built-in encumbrance so that if the Pennsylvania inheritance tax value were the full present worth of the receivable, the result would be the imposition of Pennsylvania inheritance tax upon federal income taxes. The only substantial difference between *Tench* and the present case is that appellees here received a devaluation for the amount of Pennsylvania income taxes paid as well as for federal income taxes.

The Commonwealth's alleged statutory basis for the taxation of the full value of the two items of "income in respect of a decedent" begins with Section 401 of the Inheritance and Estate Tax Act of 1961, 72 P.S. § 2485–401. Under the heading of "Method of computation of tax; residents," this section states that ". . . the tax shall be computed upon the value of the property, in excess of the deductions hereinafter specified, at the rates in effect at the transferor's death." Appellees readily concede that deductions for income taxes imposed after the decedent's death are not provided for in the Act and that deductions not specifically enumerated are not allowable. Inheritance and Estate Tax Act, §§ 601, 621, 72 P.S. §§ 2485–601, –621; *Lazar Estate,* 437 Pa. 171, 260 A.2d 734 (1970). Since no deduction is allowable, the Commonwealth argues that the word "value" in Section 401 is necessarily the gross value of the assets reduced to present worth with no allowance in the valuation for the federal and state income taxes paid.[4]

ficiary. Int.Rev.Code, § 691(c) provides a Federal income tax deduction for federal estate taxes applicable to the inclusion in the gross estate of "income in respect of a decedent." Without this specific statutory income tax deduction, such items would be subjected to double taxation by the federal government.

4. The Commonwealth contends that the allowance of a devaluation to reflect income taxes will seriously encroach upon the statutory definition of "value" which is contained in the Inheritance and Estate Tax Act at Section 102(24), 72 P.S. § 2485–102(24):

" 'Value' means the price at which the property would be sold by a willing seller, not compelled to sell, to a willing buy-

The gist of appellees' argument is that because of a technical change in federal tax law in 1942, unaccompanied by any substantial change in Pennsylvania inheritance tax law, the taxation by the Commonwealth of that portion of the decedent's estate which represents federal and state income tax is a windfall to the Commonwealth and unfair.

As the auditing judge (McKenna, P. J.) pointed out in his opinion, prior to 1942, the death of a taxpayer owning an accrued income asset caused an immediate acceleration of the federal income tax obligation attached to that asset. The accrued income was reported on the decedent's final federal income tax return, *Helvering v. Es-*

er, not compelled to buy, both of whom have reasonable knowledge of the relevant facts."

This definition, suggested by Federal Estate Tax Regulation, § 20.-2031–1(b), is summarized as "fair market value." Although the Commonwealth stipulated to the fact that the valuation differential of the two items of income in respect of a decedent accurately reflects the amount of federal and state income tax paid on the items, it argues that the definition of value necessarily means gross value with no credit allowed for income taxes paid. This is so, it argues, because if the executors put the two assets on the auction block, no willing buyer would feel obliged to discount his offer by the amount of income tax due because the buyer would take the items free of any claims for income taxes, since absent a lien, the buyer would not be obligated to pay the income taxes.

We believe that the concept of value, as stated in Section 102 (24) means "net value" which reflects any built-in encumbrance or inherent charge on the particular assets other than the inheritance and estate tax itself. In this situation, where any sale contemplated by the fair market value test is entirely theoretical, and neither side presented evidence as to the effect of the income tax charges on market forces, it was proper for the auditing judge to assess the items to reflect the real value of the asset *to the particular decedent's estate*. *Cf. Banker's Trust Company v. United States*, 284 F.2d 537 (2d Cir. 1960). Under federal caselaw, the determination of fair market value has always been a factual issue. *Helvering v. Maytag*, 125 F.2d 55 (8th Cir. 1942). The only legal issue is whether the income taxes are legally cognizable criteria to be employed in the assessment of value. *Powers v. Commissioner*, 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed. 817 (1941). We are not convinced that the Inheritance and Estate Tax Act's definition of value precludes the consideration of income tax charges in the valuation scheme, since there is no relevant direction contained in the statute and there was no evidence of market forces presented to the auditing judge.

*tate of Enright,* 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093 (1941), and the income tax attributable thereto was deductible as a debt of the decedent for Pennsylvania Inheritance Tax purposes. *Cf. Payne Estate,* 48 Pa.D. & C. 578 (O.C.Erie, 1943).

After 1942, however, the Internal Revenue Code shifted this income tax burden to the decedent's estate or to the beneficiaries. Hence, the income tax obligation was no longer technically a debt of the decedent, thus enabling the Department of Revenue to successfully assert for many years that the income tax was non-deductible. The Pennsylvania Personal Income Tax Act of 1971 similarly imposes the burden of paying the tax upon the estate or beneficiary, 1971, March 4, P.L. 6, No. 2, § 305, added 1971, August 31, P.L. 368, No. 93, § 4, 72 P.S. § 7305 (Cum.Supp., 1975–76).

Faced with the non-deductibility of federal and state income tax from Pennsylvania inheritance tax obligations, the executors successfully persuaded the lower court that, for purposes of valuation, the federal and state income taxes paid may not be included in the present worth of the accrued income items. According to appellees, the unfairness in the Commonwealth's attempted valuation scheme lies in the facts that the Commonwealth's valuation does not reflect the real economic position of the beneficiaries and that Pennsylvania inheritance tax will be paid upon Pennsylvania income tax and upon federal income tax. This amounts to two counts of double taxation.

The federal and state governments may generally tax the same subject matter at the same time and neither the United States nor the state, in determining the amount of tax due to it, is under constitutional obligation to make any allowance on account of the tax of the other. *Frick v. Pennsylvania,* 268 U.S. 473, 499, 500, 45 S.Ct. 603, 69 L.Ed. 1058 (1925), *affirming in part, Frick Estate,* 277 Pa. 242, 121 A. 35 (1923).

■ Similarly, there is no constitutional prohibition which prevents the state from taxing the same subject matter twice, *Puntureri v. Pittsburgh School District,* 359 Pa. 596, 60 A.2d 42 (1948), so long as the taxes are of a different kind, *Commonwealth v. Harrisburg Light & Power Co.,* 284 Pa. 175, 130 A. 412 (1925), and do not violate the requirement of uniformity contained in Article VIII, Section 1 of the Pennsylvania Constitution. *Dunkard Township School Tax Case,* 359 Pa. 605, 60 A. 2d 39 (1948); *Plumy v. Philadelphia School District,* 182 Pa.Super. 122, 126 A.2d 768 (1956).

■ However, because of the harshness which results from double taxation, the courts of this Commonwealth have developed certain rules of construction to insure that double taxation is not imposed arbitrarily. Thus, if the intent of the Legislature is unclear in imposing double taxation, there is a presumption against such a legislative purpose, which can only be overcome by express statutory language. *Dixon's Case,* 138 Pa.Super. 385, 11 A.2d 169 (1940); *Arrott's Estate,* 322 Pa. 367, 185 A. 697 (1936); *Commonwealth v. Harrisburg Light & Power Co., supra.* Statutes and ordinances will be construed to avoid double taxation if such construction is possible. *Puntureri v. Pittsburgh School District, supra; Paul's Estate,* 303 Pa. 330, 154 A. 503, *cert. denied,* 284 U.S. 630, 52 S.Ct. 13, 76 L.Ed. 536 (1931); *Plumy v. Philadelphia School District, supra.* These rules would appear to be corollaries of the more basic principle that a statute imposing a tax must be strictly construed,[5] and all reasonable doubt must be resolved in favor of the taxpayer. *Pickering Estate,* 410 Pa. 638, 190 A.2d 132 (1963); *Loeb Estate,* 400 Pa. 368, 162 A.2d 207 (1960).

■ Our issue thus narrows itself to whether the Legislature clearly expressed an intent that no allowance be granted in the inheritance tax valuation for the pay-

5.  1 Pa.C.S. § 1928(b)(3) (Cum.Supp.1975–6).

ment of income taxes. Clearly, there is no express statutory authorization, and reasonable doubt exists as to the intent of the Legislature to impose double taxation in this instance. The disallowance of the income taxes as a deduction, accomplished not by a substantive change in Pennsylvania inheritance tax law, but rather by changes made by the United States Congress in the income tax provisions of the Internal Revenue Code and by the imposition of the Pennsylvania personal income tax, cannot be construed as an affirmative intent on the part of the Pennsylvania legislature to impose double taxation in two respects by disallowing a devaluation of the assets to reflect the amount of income taxes paid. To hold otherwise would be to enforce double taxation by implication and speculation, which is contrary to the legal principles enunciated in our caselaw.

Even aside from the considerations of statutory construction, plain logic defeats the position of the Commonwealth. It argues that since no inheritance tax deduction is allowed for these income taxes, it is necessarily inferable that the Legislature did not intend to allow the income taxes to decrease valuation of the items. Nowhere does the Act provide for the discount of an item of accrued income by the amount of federal and state income taxes paid. The logical conclusion of such an argument is that unless an item is deductible, it is not an available consideration for purposes of valuation. Such a conclusion would lead to an absurd result since it would preclude consideration of factors which are not specifically deductible, but which have always been relevant to valuation. Unless the Legislature specifically precludes income taxes as a factor in determining the present worth of an item, we are not willing to intrude upon a completely logical calculation.[6]

The Commonwealth asserts in its brief that the construction which we today impose upon the Inher-

**6.** *See* footnote three, *supra.*

itance and Estate Tax Act is a violation of the uniformity clause of the Pennsylvania Constitution, Article VIII, Section 1. It relies upon *Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971) for the proposition that the reflection of accrued income taxes in the valuation of income in respect of a decedent will not be uniform because the graduated federal income tax rates attributable to an asset will differ from taxpayer to taxpayer. Although we recognize the importance of this issue, it is, unfortunately, not reviewable by us because of appellant's failure to file an exception in regard to this issue. Sup.Ct.O.C. Rules, § 3, rule 1, and Pa.R.C.P. 1518. *Commonwealth v. Tolleson,* 462 Pa. 193, 340 A.2d 428 (1975); *Turnway Corporation v. Soffer,* 461 Pa. 447, 336 A.2d 871 (1975); *Banes Estate,* 461 Pa. 203, 336 A.2d 248 (1975). Although exceptions were filed by the Commonwealth, none of the exceptions were even remotely related to the constitutional issue of uniformity. Even though it is probable that the issue was argued orally to the court en banc, the short opinion of that tribunal gives no hint as to whether the issue was considered by it, and at any rate, Rule 1518 requires that an exception be filed (i. e. written) and that it deal with each separate objection "precisely." "Matters not covered by exceptions are deemed waived, unless, prior to final decree, leave is granted to file exceptions raising these matters." Pa.R.C.P. 1518. Even constitutional issues may be waived. *Altman v. Ryan,* 435 Pa. 401, 257 A.2d 583 (1969). The burden was on appellant to preserve this issue for appellate review.

## II

Regarding the various dividends and unearned premiums paid to named beneficiaries under the terms of insurance policies on the life of the decedent, we are not convinced by the analysis of the lower court that these

items of income are proceeds of insurance on the life of the decedent.

Section 303 of the Inheritance and Estate Tax Act (72 P.S., § 2485–303) states:

"All proceeds of insurance on the life of the decedent, unless payable to the estate of the decedent, are exempt from inheritance tax. Proceeds payable to an inter vivos or testamentary trustee or other beneficiary designated in the decedent's will or in an inter vivos instrument of transfer are exempt from inheritance tax within the meaning of this section."

The nine policies involved here were payable to named beneficiaries or to an insurance trust. The additional benefits other than the face values of the policies which accrued to the beneficiaries amount to $1,635.68. The original stipulation between the parties did not elaborate upon the nature of these additional benefits and the opinion of the lower court chose to treat them collectively. The auditing judge reasoned that because the various benefits were "fused" into the policies of insurance and were payable to the beneficiaries as "fruits of the policies," such benefits were proceeds of insurance and thus, exempt from taxation.

We find this analysis to have been somewhat cavalier. A supplemental stipulation between counsel, filed of record some three and one-half months before the opinion was handed down, elaborated upon the initial stipulation by dividing the additional insurance benefits into more specific categories: post-mortem dividends; accumulated dividends; and return of unearned premiums. The stipulation further requested that the auditing judge take judicial notice of the nature of these insurance payments but reserved the right to the parties to present evidence on these matters. The auditing judge failed to consider this additional stipulation in his opinion.

Both parties in their briefs to this Court have quoted extensively from insurance textbooks to enlighten us as

to the nature of these benefits. We feel that an analysis of the benefits should more properly be conducted in the court below so that evidence may be heard, where necessary to enlighten the court as to the nature of these proceeds. Furthermore, the analysis by the court below that these benefits are fused into the policies and are fruits of the policies is not, in any event, the correct analysis.

Federal caselaw which deals with "the amount receivable . . . as insurance under policies on the life of the decedent" (Int.Rev.Code of 1954, § 2042) is most helpful in determining what is meant by "proceeds of insurance" in the Pennsylvania statute. It is manifestly clear that even though a contract may be labeled one of "insurance," such designation does not by itself entitle the estate to the tax breaks given to insurance either under Federal or State law. For instance, annuity payments, even if joined together in the same contract with insurance payments, are not entitled to treatment as insurance. *Estate of Keller v. Commissioner*, 312 U.S. 543, 61 S.Ct. 651, 85 L.Ed. 1032 (1941); *Helvering v. Le Gierse*, 312 U.S. 531, 61 S.Ct. 646, 85 L. Ed. 996 (1941); *Bayer's Estate*, 345 Pa. 308, 26 A.2d 202 (1942); *Wright Estate*, 11 Fiduc.Rep. 503 (1961). The controlling criterion is whether the payments arose out of the exposure of the insurer to an insurance risk. *Estate of Keller v. Commissioner, supra; Chew's Estate v. Commissioner*, 148 F.2d 76 (5th Cir.), *cert. den.*, 325 U.S. 882, 65 S.Ct. 1575, 89 L.Ed. 1997 (1945); *Seward's Estate v. Commissioner*, 164 F.2d 434 (4th Cir. 1947). In other words, the proceeds must arise by way of a transaction possessing features of insurance risk-shifting and risk-distributing, *i. e.*, from the risk of loss of life of the insured. If the payment of the additional premiums and dividends are contingent upon criteria which are severable under the terms of the contract from the insurance

risk, such payments are not encompassed within the proceeds of insurance exemption.

Accordingly, the portion of the decree which allowed a reduction in valuation for the amount of income tax payments on the items of income in respect to a decedent is affirmed. That portion of the decree which allowed an exemption for additional benefits arising from insurance contracts is vacated and remanded for reconsideration in accordance with the principles enunciated above. Each party to pay own costs.

ROBERTS, J., filed a concurring opinion.

MANDERINO, J., concurred in the result.

NIX, J., filed a concurring and dissenting opinion.

POMEROY, J., filed a dissenting opinion in which EAGEN, J., joins.

ROBERTS, Justice (concurring).

Although I agree that the Commonwealth inheritance tax is to be imposed on the net estate after the payment of federal and state income taxes, I am of the opinion that the amount of federal and state income taxes paid in this case does not properly bear on the question of valuation but instead is deductible as a liability of the decedent.[1]

---

1. The amount of such taxes paid should be deductible under either of the following sections of the Inheritance and Estate Tax Act of 1961, Act of June 15, 1961, P.L. 373, 72 P.S. §§ 2485–101 et seq. (1964):
    § 621 *"Taxes imposed against the decedent* or against any property constituting a part of decedent's gross taxable estate, and which are owing prior to decedent's death, shall be deductible. However, taxes for which decedent is not personally liable shall not be deductible in an amount exceeding the value of the property against which such taxes are liened." (emphasis added).
    § 631 "All liabilities of the decedent shall be deductible, subject to the limitations hereinafter set forth."

Prior to 1942 such accrued but uncollected income was reported on the decedent's final federal income tax return. This tax payment was not ordinarily due until the end of the taxpayer's accounting year, but federal law provided that the death of the taxpayer accelerated the due date of the tax payment to the date of death. A problem arose when income accrued by a cash basis taxpayer before his death was not paid to him (or more accurately, his estate) until after his death. Because death terminated the taxpayer's final tax period, such income created an anomalous situation in which the accounting period for the tax liability had ended, yet income attributable to the decedent still was collected. *See Helvering v. Enright's Estate,* 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093 (1941); *Pfaff v. Commissioner,* 312 U.S. 646, 61 S.Ct. 783, 85 L.Ed. 1099 (1941).

Until 1942 such accrued income apparently was to be reported on the decedent's final federal income tax return. (However, the procedure for collecting the tax on income received after the date of the final income tax return was never clearly established). The income tax attributable to that income was deductible as a debt of the decedent in computing the Pennsylvania inheritance tax.[2]

In 1942 the Internal Revenue Code was amended to ameliorate the account problems caused by the post-death receipt of such income.[3] Income of this nature was characterized as "income in respect of a decedent." This in-

2. See *Payne's Estate,* 48 D & C 578 (Erie 1943).

3. "[Section 126 of the Internal Revenue Code of 1939 was] added by the Revenue Act of 1942 and [was] designed to overcome the preexisting requirement that there be included in the income of a decedent for the taxable period in which his death occurred all the income accrued up to the date of his death . . . . [T]he 1942 amendments made the income accrued solely by reason of the decedent's death taxable to the actual recipient at the time the income was received."
House Committee Report, Internal Revenue Code of 1954, 3 U.S. Code Cong. & Admin.News 4358 (83d Cong., 2d Sess. 1954).
Section 126 of the Internal Revenue Code of 1939 was similarly reenacted as section 691 of the Internal Revenue Code of 1954.

come no longer created an income tax obligation considered a debt of the decedent. Liability for the tax due on this income was now considered a debt of the estate.

The Commonwealth Department of Revenue, realizing that the Transfer Inheritance Tax Act [4] had not been revised to accommodate this change in the Internal Revenue Code, then asserted that since the tax due on the income in respect of the decedent was never technically a debt of the decedent it could not be deducted. Thus, a change in the Internal Revenue Code to rectify an anomalous accounting procedure in the method of collecting the federal income tax has been construed by the Department of Revenue as providing a windfall to the Commonwealth. I cannot agree.

I believe that under either section 621 of the Inheritance Tax Act ("Taxes imposed against the decedent") or section 631 ("liabilities of the decedent") [5] the tax is properly deductible, regardless of whether the Internal Revenue Service deems the tax on such income technically a debt of the decedent or a debt of the estate. It should not make a difference whether the partner was paid a share the day before he died or whether his widow received his share the day after his death. Nor should it make a difference whether he used the cash or accrual method of accounting. There can be no doubt that the decedent was responsible for generating the income. There should be no doubt, therefore, that the liability for the tax on that income was also generated by the decedent. Such a liability, in my opinion, is exactly the sort of obligation which the statute contemplates as being deductible.

4. Act of June 20, 1919, P.L. 521, as amended, 72 P.S. §§ 2485–101 et seq. (1964), partially repealed and limited to estates of decedents dying before January 1, 1962, by the Inheritance and Estate Tax Act of 1961, Act of June 15, 1961, P.L. 373, 72 P.S. §§ 2485–101 et seq. (1964).

5. Act of June 15, 1961, P.L. 373, art. VI, §§ 621, 631, 72 P.S. §§ 2485–621, 631, supra, n. 1.

Changes in the Internal Revenue Code to govern when this liability becomes due, and from whom it is ultimately collectible, do not alter the conclusion that this was originally an obligation of the decedent John Evans Rose. As such it was deductible.

For this reason I do not believe that there is any question of valuation or double taxation involved. The amount representing payment of federal and state income taxes is not to be taxed simply because it should be deducted before the estate and inheritance tax is imposed.

NIX, Justice (concurring and dissenting).

I am in agreement with the reasoning and the result reached by the majority opinion on the questions concerning the undistributed share of partnership profits and the right to proceeds from the sale of stock. However, with respect to the issue of benefits arising from the insurance contracts on the life of the decedent, I am in accord with the view expressed in Part II of Mr. Justice Pomeroy's dissenting opinion.

I would affirm the decree of the court below.

POMEROY, Justice (dissenting).

In my view, the decision of the majority of the Court in this case not only is erroneous but also will lead to unnecessary complications in the administration of decedents' estates in Pennsylvania. Therefore, for the reasons which follow, I must respectfully dissent.

## I. VALUATION OF INCOME IN RESPECT OF A DECEDENT

The initial problem presented by this case is one of valuation for Pennsylvania inheritance tax purposes of certain assets in a decedent's estate. The value of an item of property subject to such taxation is fair market

value as statutorily defined in the classic mold.[1]  Value as thus determined is an objective fact, although it may of course rest in some situations on the expert opinion of qualified persons.  Where the items of property in a decedent's estate are liquidated sums of money, such as cash or currency in hand or a credit balance in an account with a solvent bank or other debtor, no valuation problem is present, for face value and fair market value are one and the same.

In the case before us, the items in dispute are known sums of money due the decedent at the time he died; one item is a liquidated share of partnership profits, the other item the proceeds of the sale of corporate stock made by decedent's stock broker of stock previously owned by the decedent.  Given the solvency of the obligors, normally there could be no question of the value of these items on the valuation date, which normally is the date of decedent's death; the value would be face value, and that is the value at which the appellant, the Commonwealth, did assess transfer inheritance tax in this case.

The appellees assert, however, that because of the special nature of these receivables, namely, that they are taxable to them as recipients as income for federal income tax purposes, their value for Pennsylvania inheritance tax purposes must be reduced by the amount of federal income tax they, the recipients, will be obliged to pay in respect of those items.  The orphans' court division and this Court accept that conclusion.  With respect, I must disagree.

There is no doubt, as the Court's opinion states, that as a matter of statutory construction double taxation is

---

1.  " 'Value' means the price at which the property would be sold by a willing seller, not compelled to sell, to a willing buyer, not compelled to buy, both of whom have reasonable knowledge of the relevant facts."  Inheritance and Estate Tax Act of 1961, Act of June 15, 1961, P.L. 373, Art. I, § 101 et seq., 72 P.S. § 2485–101 et seq. (sometimes herein referred to as "the Act") § 102(24).  An exception to this rule is made by Section 507 of the Act with respect to property subject to an option or agreement to sell.

as a matter of policy to be avoided if reasonably possible. Indeed, this is an appealing case in which to seek to do so, since the liability of the questioned receivables to income taxation is undisputed and the income tax has already been ascertained and paid. I am satisfied, however, that the method of valuation now sanctioned by the Court is not within the intendment of the inheritance tax act, and may well introduce elements of complexity, uncertainty and delay in the computation of the inheritance tax and the settlement of decedents' estates in Pennsylvania.

Instead of assigning to the receivables here involved an objective fair market value (i. e., face value reduced to present worth if need be) as of the date of decedent's death,[2] what is now being approved is an individuated value, i. e., the value to the recipients (in this case they happen to be the executors, but the transferee from the decedent could be any person appropriately designated by will or otherwise) at some time *after* decedent's death when the extent of the recipient's federal income tax liability for the items in question will have become ascertained.

Not only is such an approach contrary to the scheme of Pennsylvania inheritance taxation, but it introduces a whole body of federal income tax law—"income in respect of a decedent"—which, to say the least, is far from clear in scope and application. Thus in the task of construing the inheritance tax act the desirable goal of avoiding double taxation must be balanced against the

2.  The valuation date is the date of the transferor's death except as expressly provided to the contrary in the Act, § 501 of the Act, 72 P.S. § 2485–501. A major exception, not here applicable, pertains to transfers of any interest in property to take effect in possession and enjoyment after the expiration of one or more interests for a term of years, for life or for other limited period. With respect to such transfers the valuation date is the date the future interest takes effect in possession and enjoyment. § 506 of the Act, 72 P.S. § 2485–506.

disadvantages of such a new departure from an administrative standpoint.[3]

"Income in respect of a decedent" is a category of personal income identified as taxable by Section 691 of the Internal Revenue Code.[4] It is the name given by that section to items of income earned by a decedent or to which he became otherwise entitled during his life but which were not properly reportable by him as income up to the time of his death. Under § 691 such income is to be reported by and is taxable to the persons who actually receive it (the estate or other beneficiaries).[5] "A basic problem arising in the application of § 691 is that Congress has not seen fit to include a definition of 'income in respect of a decedent' in the Internal Revenue Code. Nor have the courts been able to fill this void by establishing a definition that would apply equally in every fact situation." Willan, 32 T.M., Income in Respect of a Decedent-General (1970).[6] The applicable regulation

**3.** The Statutory Construction Act of 1972 provides that when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters, "the consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(6). It is to be presumed that the General Assembly intends the entire statute to be effective and certain. *Ibid.*, § 1922.

**4.** The phrase was introduced into the law in 1942 when Congress added § 126 to the Internal Revenue Code of 1939. In general, it refers to those items of income which "accrued" to, but were not received by, a cash basis taxpayer in the year of his death under § 42 of the Revenue Act of 1934.

**5.** An estate which has a right to receive income in respect of a decedent will include such income in the income tax filed by the estate only to the extent it is actually received; if the estate distributes a right to § 691 income to a specific legatee, the legatee becomes the taxpayer who must report the income when received. M. Carr Ferguson, *Income and Deductions in Respect of Decedents and Related Problems,* 25 Tax Law Rev. 1, 20 (1969).

**6.** "In following a recipe for humming bird pie, the most difficult task is catching the humming birds. The sternest task in dealing with income in respect of a decedent is the task of detecting it. The statutory concept has never been satisfactorily defined. It is perhaps best understood in light of its legislative history and by example." Ferguson, *supra,* n. 5, at 6. More than a score of articles on this subject appeared in a recent four year period. See CCH Federal Tax Articles, 1968–72, § 69.15.

stipulates that income in respect of a decedent includes: (1) accrued income of a cash basis taxpayer; (2) income accrued solely by reason of death to an accrual basis taxpayer; and (3) income to which the decedent had a contingent claim at the time of his death. Income Tax Regulation § 1.691(a)–1. The items involved in Mr. Rose's estate fall into the first category, but the decision cannot logically be limited to such items.

The entire spectrum of income in respect of a decedent is wide indeed. Included in whole or in part are compensation for decedent's services,[7] income derived from the sale of property,[8] investment income, such as rents, royalties, interest and corporate distributions,[9] partnership receipts,[10] distributions in liquidation of the decedent's partnership interest,[11] and other possible types of deferred receipts. See Ferguson, *Income and Deductions in Respect of Decedents and Related Problems*, 25 Tax Law Rev. 1, 27 *et seq.* (1969); 2 Mertens, Law of Federal Income Taxation § 12.102C, pp. 406–419; Willan, 32 T.M., Income in Respect of a Decedent-General, A4 *et seq.* In short, "an unexpectedly large portion of the testator's property may constitute income in respect of a decedent at the time of his death."[12] Henceforth, as I read the Court's opinion, the estates of Pennsylvania decedents must be reduced in value by the amounts the recipients of these assorted types of property rights are obliged to pay as federal income tax thereon. The only

7. These embrace not only back wages or salary, but fees, bonuses and commissions, certain categories of post-death benefits, proceeds from a qualified pension or profit sharing trust, the exercise of certain compensatory stock options, etc.

8. For the varieties of transactions that may be included in this category, see Ferguson, *supra,* n. 5, at 41–58.

9. See Ferguson, *supra,* n. 5, at 59–76.

10. The ramifications and vagaries of this item are described in Ferguson, *supra,* n. 5, at 76–104.

11. See Ferguson, *supra,* n. 5, at 104–126.

12. See Ferguson, *supra,* n. 5, at 159.

guide to identifying these items, the humming birds in the pie (see note 5 *supra*), is the federal law on the subject; thus we are incorporating—lock, stock and barrel —into the Pennsylvania inheritance tax law a body of case law which, not unlike other aspects of federal law, is a model neither of simplicity nor of clarity. As Professor Ferguson puts it, "Twenty-five years' experience with the concept of income in respect of decedents has seen considerable litigation but few emerging guidelines." Ferguson, *supra,* at 9.[13]

As pointed out above, the problem of identifying these types of assets under the federal law is compounded by the fact that their valuation will now depend not on their face value or any objectively ascertainable discount factor (such as reduction to present worth, which will normally be done in any case of this sort), but by the personal tax situation of the recipient; that is, the higher the income tax bracket of the recipient in the taxable year of receipt, the lesser the value to be attributed to the item for Pennsylvania inheritance tax purposes; conversely, the lower the bracket of the recipient, the greater the value of the receivable. Thus two deferred receipt items of, say $1,000 each, which under a will are bequeathed to two different legatees will not only be valued at some lesser amount than $1,000, but at *differing* lesser amounts depending on the differing brackets of the two beneficiaries. These respective values, moreover, will

13. The problems in the federal tax law which the Court is now borrowing are not confined to identifying the kinds of property interests which are embraced within the term "income in respect of a decedent;" they also extend to ascertaining the appropriate deductions which are applicable to such income under section 691(b) of the Internal Revenue Code. See 2 Mertens, *Law of Federal Income Taxation,* § 12.102d pp. 419 *et seq.*; Ferguson, *supra* n. 5, at 134–148. In those estates where a federal estate tax is payable, the further deduction for a portion of that tax under Sec. 691(c) will become a factor in the determination of the amount of income tax for which the recipient of deferred income items is obligated. The propriety and accuracy of such deductions will, it would appear, now become a concern of the inheritance tax appraiser.

not be known until the two beneficiaries have completed their own returns for the year or years of receipt; this could be months or conceivably even years after the date of death of the decedent. To hold as the Court does that such an imponderable and unpredictable figure as the effective tax rate at some future date of the person who happens to be the recipient of the income item shall relate back to the date of death of the transferor and establish taxable value in his estate as of that date seems to me a tour de force, and I cannot accept it as appropriate statutory construction.

To suggest, as does the Court's opinion, that what it considers the inequity of valuing these assets at face (after reducing to present worth) is something foisted on our inheritance tax law by a technical Congressional amendment to the income tax law in 1942 is hardly accurate.[14] The Pennsylvania inheritance tax act has been amended a number of times since 1942. The inheritance and estate tax laws of the Commonwealth received thorough study by the Joint State Government Commission in 1957, which culminated in the Inheritance and Estate Tax Act of 1961.[15] Amendments to that Act were

**14.** Prior to 1942, as the majority opinion notes, earned but unpaid income items were included in the final returns of a decedent and taxed as part of his income in the tax year ending with his death; the payment of the tax was, of course, an obligation the estate had to defray and the clear value of the estate for Pennsylvania inheritance tax purposes was reduced accordingly. In order to eliminate this "bunching" in the final return of the decedent, the income tax law was changed to impose the income tax on the income to which the decedent was entitled on those persons who received it by reason of his death. See Ferguson, *supra*, n. 5, at 6–9.

**15.** That this revision was carefully prepared was made clear by the chairman of the Joint State Government Commission, Baker Royer, Esq., in his forward to the 1963 Report of the Commission:

"Tentative drafts of the proposed legislation were critically examined by the bench and bar and numerous groups having specialized knowledge of the subject. The Commission and its advisors were aided substantially in their work by the Department of Justice and received helpful suggestions and advice

enacted in 1961 and 1963, and the Act has been further amended on five occasions since. In light of this history and the failure of the legislature for thirty-three years to make any alteration either in the statutory provisions for valuation or for deductions to take account of the federal change in 1942, it is difficult for me to accept the majority's conclusion that the intent of the legislature concerning the treatment of these items is in doubt.[16]

As the opinion of the Court acknowledges, the fact that receipt of the property here involved happens to entail two liabilities for tax, one federal and the other state, is not an unconstitutional result. See *Frick v. Pennsylvania*, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058 (1925); *Kirkpatrick's Estate*, 275 Pa. 271, 119 A. 269 (1922). Indeed, the receipt of these items of property may entail also a federal estate tax. That tax is expressly made non-deductible for Pennsylvania inheritance tax

> from many individuals and groups, among them the Inheritance Tax Committee of the Tax Section of the Pennsylvania Bar Association, the Pennsylvania Bankers Association, Philadelphia Trust Companies Committee, Philadelphia Bar Association Tax Committee, and the Philadelphia Bar Association Orphans' Court Committee." General Assembly of the Commonwealth of Pennsylvania, Joint State Government Commission, Inheritance and Estate Tax Act of 1961, as amended, Foreward at V (1963).

16. The legislature has never seen fit to make provision for valuing these income items in any way other than ordinary receivables are valued. Nor could the legislature create an inheritance tax deduction with respect to income taxes paid on income with respect to a decedent, for they are no longer debts of the decedent; they only become an estate obligation if the estate happens to be the recipient, in which event the tax is the estate obligation as a separate taxable entity. Contrary to the view expressed by Mr. Justice ROBERTS in his concurring opinion, it seems to me clear that neither of the two sections of the Pennsylvania Inheritance and Estate Tax Act of 1961 which allow a deduction for taxes can be applied to this type of tax obligation. Under Sec. 621 the taxes must have been owing prior to decedent's death to be taxable; income taxes on income in respect of a decedent are not so owing. Under Sec. 622 a deduction is allowed for death taxes (other than federal estate tax) paid to other states or taxing jurisdictions outside the United States. The taxes we are here concerned with are not death taxes nor are they paid to any other state or to a foreign taxing jurisdiction.

purposes by Section 622 of the Act, 72 P.S. § 2485–622, see *Kirkpatrick's Estate, supra,* and it has never been held that the bite of the federal estate tax may be considered in computing the value of assets subject to Pennsylvania inheritance tax. The Court's reasoning today, however, would seem to permit the devaluation of an accrued income item not only by the amount of federal income tax which that item must bear in the hands of the recipient, but also by the amount of federal estate tax which that item must bear if the recipient is the decedent's estate (and so subject to the federal estate tax). This, I suggest, would be to compound the erosion of the Pennsylvania tax [17] which the present decision initiates.

For these reasons I would reverse the decree in so far as it allows a reduction in valuation of income in respect of a decedent in the amount of federal income tax payable upon such income.

## II. TAXATION OF INSURANCE DIVIDENDS AND UNEARNED PREMIUMS

Turning to the matter of the taxability of the insurance payments, the touchstone must be Section 303 of the Inheritance and Estate Tax Act of 1961, Act of June 15, 1961, P.L. 373, Art. III, § 303, 72 P.S. § 2485–303: *"All*

---

**17.** The federal government, when it enacted § 691 of the Internal Revenue Code, did seek to mitigate the effect of a recipient of income in respect of a decedent having to pay both income tax and an estate tax on such property. Thus § 691(c) allows the recipient of such income an offsetting income tax deduction for the portion of any federal estate tax attributable to the inclusion of such items in the decedent's gross estate. *See* Income Tax Regulations § 1.691(c)(1). This provision does not, however, eliminate double taxation by the federal government, as the majority opinion seems to suggest. Opinion of the Court, *supra,* n. 3. It merely allows a portion of the federal estate tax to be taken as an income tax deduction. Thus if the income in respect of a decedent were $25,000 and the estate tax attributable thereto were $5,000, the latter figure would be a deduction from taxable income. Income tax would still be payable on $20,000, and estate tax on $25,000. Sec. 691(c) does not provide for a similar deduction with respect to state death taxes which are based in part on income assets.

*proceeds* of insurance on the life of the decedent, unless payable to the estate of the decedent, are exempt from inheritance tax." (My emphasis). This is a categorical and unequivocal declaration. While the word "proceeds" is not defined in the Act and (so far as I can determine), the courts of this State have never been called upon to construe it,[18] it is clear that the distinction which the Court now draws between payments which are related to the "insurance risk" and those which somehow are severable from that risk is a refinement which finds no basis in the Act. The Court states that the payment of accumulated dividends and post-mortem dividends and the return of unearned premiums in respect of the decedent's policies may be "contingent upon criteria which are severable under the terms of the contract from the insurance risk" [opinion of the Court, ante at 120], but nowhere does the opinion indicate how one is to determine these criteria or effectuate a severance. The introduction of these uncertain concepts into what has heretofore been an accepted and uniform pattern of exempting all insurance payments from inheritance tax computation, seems to me unnecessary and confusing. Moreover, while I have no readily available statistics, there are many who die leaving life insurance proceeds as the sole or principal asset transferred to surviving members of their families. The opinion of the Court will require that henceforth each such policy be scrutinized to determine whether there exist "criteria which are severable" from the risk insured against, and file an inheritance tax return accordingly. In light of the relatively small sums usually involved in such dividend and return premium payments, the attempted distinction becomes almost a quibble.

18. In cases involving the use of the term "proceeds" in wills and trust instruments, this Court has said that its meaning must depend upon the context in which it is used. See *Estate of Rosenblum,* 459 Pa. 201, 328 A.2d 158 (1974); see also *Foster's Estate,* 324 Pa. 39, 187 A. 399 (1936); *Haak Estate,* 165 Pa.Super. 180, 67 A.2d 449 (1949).

There can be no doubt that, when used by itself, the word "proceeds" is one of broad import; it has been defined as "[t]hat which is received for something, whether in cash or other thing of value," Ballentine's Law Dictionary (3rd ed. 1969), and as "issues; income; yield; receipts; or produce," Black's Law Dictionary (4th ed. 1968). And there can be no doubt that the phrase *"all* proceeds" has a meaning which is even broader, encompassing all those things which are derived from a particular source. Thus I have no difficulty in finding that "all proceeds of insurance on the life of the decedent" includes all sums payable to named beneficiaries of a life insurance policy by virtue of the terms of those policies.

It is of course correct, as the Court observes, that a contract is not necessarily one of life insurance simply because it is so labled [opinion of the Court, ante at (p. 13 of typewritten copy)], and that a life insurance contract is not to be confused with an annuity contract, *id.,*[19] for the risks protected against in the two types of agreements are quite discrete.[20] Once it is determined, however, that a given contract is indeed a life insurance contract, I can find no basis in the Inheritance and Estate Tax Act or in any statutory or decisional law relative to life insurance for attempting to distinguish between the types of payments made to a beneficiary on death of the

**19.** *See* R. Grossman & M. Smith, Pennsylvania Inheritance and Estate Tax § 303–4 (1971).
Conversely, a life insurance feature in an accident insurance policy should be treated as life insurance within the meaning of Sec. 303 of the Act. See *Stark's Estate*, 43 Lanc. 417 (1933).

**20.** See *Bayer's Estate*, 345 Pa. 308, 26 A.2d 202 (1942), in which it is said:
"It will be observed that, in the case of life insurance, for annual premiums payable to the company (which in effect are annuities paid by the insured) the company will pay a specified sum at the insured's death; whereas the converse is true of the annuity contract, for, in that transaction the annuitant pays the single sum in consideration of which the company makes annual payments to him."

insured; all should be treated, as they have regularly been heretofore, as exempt under Section 303 of the Act.

Because the policies involved in this appeal are conceded by all concerned to be life insurance policies, the orphans' court division was correct, in my view, in holding that all payments made to named beneficiaries by virtue of the terms of those policies are exempt from inheritance taxation.

EAGEN, J., joins in this dissent.