City of Pittsburgh and Joseph L. Cosetti, Treasurer, Appellants *v.* Ivy School of Professional Art, Inc., Appellee.

Argued May 2, 1978, before President Judge Bow-
MAN and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS, BLATT and DiSALLE.

*Grace S. Harris,* Executive Assistant City Solici-
tor, with her *Mead J. Mulvihill, Jr.,* City Solicitor, for
appellants.

*Emil W. Herman,* with him *Thomas R. Solomich,*
and *Rothman, Gordon, Foreman and Groudine,* PA,
for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 31,
1978:

Ivy School of Professional Art, Inc. (Ivy) is a cor-
poration organized under Pennsylvania law as a cor-
poration for profit engaged in the business of oper-
ating a school for the teaching of art, photography and
related subjects.

From 1970 through 1975, Ivy paid taxes to the City
of Pittsburgh (City) on its gross receipts, excluding

therefrom State and Federal funds attributable to a variety of aid programs, which funds were received for and credited to the accounts of individual students. The City contends that for those years Ivy was liable for the City's Business Privilege Tax (BPT), that the taxes were paid pursuant to the BPT, and that under the BPT, said exclusions were improper. Ivy counters that it was liable in 1970 only for the City's Institution and Service Privilege Tax (ISPT), that for the years 1971-1975 it was liable for neither, and that under the ISPT said exclusions were lawful.

In 1975, the City Treasurer disallowed said exclusions and assessed additional taxes under the BPT.

From this assessment and the City Treasurer's denial of a hearing, Ivy filed in the court below a "Petition for Appeal from Assessment of Business Privilege Taxes." The court below consolidated these proceedings with *City of Pittsburgh v. Royston Service, Inc.*, 37 Pa. Commonwealth Ct. 394, A.2d (1978).

After hearing on stipulations of facts and the submission of briefs, the court below issued an order consistent with its order in *Royston, supra,* holding that from 1971, Ivy was liable for neither the BPT nor the ISPT, that for the year 1971, it was liable for ISPT and that the ISPT excluded from gross receipts payments made by the State and Federal governments.

In *Royston, supra,* we concluded that simultaneous amendments to both the BPT and ISPT effective January 1, 1971, did not produce the result of excluding educational institutions organized for profit from taxation under *both* taxing ordinances but rather subjected them to taxation under the BPT for the reason they were no longer subject to the ISPT. To that extent, *Royston* is controlling of this appeal as to the tax years 1971 to 1975.

The remaining issues are which tax was Ivy subject to for the tax year 1970 and whether for that year it was entitled to exclude from gross receipts the government funds in question.[1]

The BPT is imposed upon "[e]very person engaging in any business in the City of Pittsburgh," Section 3 of the BPT, and "upon the privilege of operating or conducting business in the City of Pittsburgh as measured by the gross receipts therefrom." Title, BPT. "Person" is defined in Section 2(b) as "any natural person, partnership, unincorporated association or corporation, non-profit or otherwise."

"Business" is defined in Section 2(c)(1) as "carrying on or exercising whether for gain or profit or otherwise within the City of Pittsburgh any trade, business ... profession, vocation, service, construction, communication or commercial activity, or making sales to persons or rendering services from or attributable to a Pittsburgh office or place of business."

The ISPT, prior to 1970, was imposed upon "[e]very person or Institution engaging in any service in the City of Pittsburgh," Section 3 of the ISPT, and "upon the privilege of conducting or operating a service institution in the City of Pittsburgh as measured by the gross receipts derived from all service transactions...." Title, ISPT.

"Person" was defined in Section 2(b) as "[a]ny natural person, non-profit partnership or corporation, unincorporated association, or any other organization or entity providing service to the general public or any select or limited number thereof."

Section 2(c) defined "service" as "[c]arrying on or exercising . . . medical, educational, social, recre-

---

[1] The provisions of the BPT with which we are here concerned were not affected by the 1970 amendments.

ational, vocational, or any other type of service for which a charge is collected.''

"Institution" was defined in Section 2(d) as "[a]ny organization, corporation, unincorporated association or any other entity, including but not limited to ... schools. ..."

Under the broad definitions quoted above, it is clear that Ivy could have been included under either the BPT or the ISPT or both. This is not, however, the case as by its own regulation, Section 109 adopted in 1969, the City recognized the taxes as mutually exclusive. We would be compelled to so hold in any event because of the strong presumption against double taxation. *Estate of Rose,* 465 Pa. 53, 348 A.2d 113 (1975). *See also* Section 2(f) of the ISPT.

We hold, therefore, that for the 1970 tax year, Ivy was subject to only the ISPT. The ISPT is specifically applicable to "schools," Section 2(d), and "educational" services, Section 2(c). The BPT could be applied to Ivy only by a broad definition of the term "service," Section 2(c)(1). The Statutory Construction Act of 1972, 1 Pa.C.S. §1933, provides:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

The ISPT, being more particularly applicable to Ivy, shall control. *See also* Section 2(f) of the ISPT.

Ivy relies upon Section 2(f) of the ISPT to support its contention that government funds were not includable in its computation of gross receipts under the ISPT.

Section 2(f) of the ISPT defines "gross receipts" as follows:

'Gross Receipts'—cash, credits, property of any kind or nature received in or allocable to the City of Pittsburgh from any Institution by reason of any transaction or any service rendered.

. . .

'Gross Receipts' shall include payments from insurance or other third party payments for the cost of service.

Section 2(f) excludes from this all-encompassing definition "receipts subject to the general Mercantile License Tax or the Business Privilege Tax or the Earned Income Tax; *payment, income or grants* from Federal, State or local governments. . . ." (Emphasis added.)

The City contends that such payments were third party payments under Section 2(f) made to Ivy for the benefit of its students in lieu of direct tuition payments.

This argument, while facially appealing, ignores the broad exclusionary language of Section 2(f). Even were we to characterize Section 2(f) as arguably allowing the City to tax such funds, read in conjunction with the exclusionary language of Section 2(f), 1 Pa. C.S. §1922(2), it would still be sufficiently ambiguous to invoke the doctrine that "where the issue is whether property is taxable or whether the individual is subject to taxation, all reasonable doubts must be resolved in favor of the taxpayer. . . ." *Commonwealth v. Rohm and Haas Co.*, 28 Pa. Commonwealth Ct. 430, 435, 368

A.2d 909, 912 (1977).[2] Accordingly, we hold that for the tax year 1970, Ivy was entitled to exclude from its computation of gross receipts the government funds in question.

For the reasons stated in *Royston, supra,* we shall decline to sanction the imposition of penalties but interest shall be imposed.

### ORDER

Now, August 31, 1978, the order of the court below is reversed and the above appeal is hereby remanded for further proceedings and entry of judgment consistent with this opinion.

---

[2] Ivy does not argue that such exclusion is permitted under the BPT. In *Rohm and Haas, supra* at 436, 368 A.2d at 912, we said:

> [W]here the power to tax is clear, and the taxpayer is within the taxing statute's general scope, language of exemption and deduction must be strictly construed. . . . It is, therefore, unimportant that the Act does not expressly prohibit the deductions sought by Appellants. What is decisive is that nothing in the Act permits them. . . . (Citations omitted.)

Such is the case under the BPT.