[No. 45586. En Banc. July 26, 1979.]

*In the Matter of the Estate of*
BENJAMIN N. PHILLIPS.

*Slade Gorton, Attorney General,* and *William B. Collins, Assistant,* for appellant.

*Davis, Wright, Todd, Riese & Jones,* by *Steven W. Andreasen* and *Malcolm A. Moore,* for respondent.

ROSELLINI, J.—This appeal is taken from an order in probate by which it was ruled that, under RCW 83.16.010, the income tax liability of a recipient of an asset which constitutes income in respect of a decedent under section 691 of the Internal Revenue Code is properly deductible from the market value of the asset in determining its value for inheritance tax purposes. We reverse.

In March 1973, Benjamin N. Phillips entered into a contract for the sale of certain stocks, payment for which was to be made in installments. In July of that year he transferred his interest in the agreement to a living trust. He died on November 18, 1973. His executrix elected to report the capital gain from the sale of the stock as installments were received. By virtue of this election, the various trusts and individuals who would later receive installment payments pursuant to the agreement would be required, for federal income tax purposes, to report a portion of each payment received as capital gain.

In reporting these assets to the inheritance tax division, the executrix set the value at $1,904,329.01 plus accrued interest, but deducted from the value the sum of $269,281.21, that being the amount of capital gains tax which the various beneficiaries had paid on their respective interests in the installments paid after the death of Phillips. Because the inheritance tax division refused to allow this deduction, the matter was submitted to the probate judge, who ruled in favor of the executrix.

The parties are agreed that the inheritance tax is measured by the fair net value of the assets of a decedent, after deducting the encumbrances, liens, and other secured charges thereon (RCW 11.44.066) and after further deducting the items allowed under RCW 83.04.013. These consist of all debts owing by the decedent at the time of his death, the local and state taxes due from the estate prior to his death, a reasonable sum for funeral and burial expenses,

administration expenses, and a specified family allowance. It is not suggested by the executrix that the income tax to be paid by beneficiaries upon assets received from the estate is included among the latter deductions, nor does she contend that such taxes are an encumbrance, lien, or other secured charge upon the property.

Property is to be valued and appraised at its fair market value on the day of the death of the decedent. RCW 83.16.010.

In short, the tax is to be measured by the market value of the assets as of the day of death, less the encumbrances upon those assets and less the items allowed under RCW 83.04.013. *In re Estate of Toomey,* 75 Wn.2d 915, 454 P.2d 420 (1969).

It will be seen that the only taxes which are deductible are those which constituted debts of the decedent. It is not claimed that the income taxes to be paid by the beneficiaries fall within that category.

We find in the statutes no authorization to deduct such income taxes from the fair net value of an asset for purposes of calculating the inheritance tax.

■ It is settled that the State's power over property of a decedent is plenary, and its right to direct its disposition unlimited. *In re Estate of Carlson,* 61 Wn.2d 359, 378 P.2d 435 (1963). We said there that those claiming such property must find the foundation for their claim in the laws of the state. That case arose after the legislature had repealed Laws of 1931, ch. 134, § 1, p. 401, which allowed the deduction of federal estate taxes as a claim against or indebtedness of the estate. It appears to have been contended by the estate that, even without the express statutory authority, there was implied authority to deduct the estate tax. The inheritance tax, it was argued, was an excise tax on the right to receive property, rather than a tax on the right to transmit property, and since the federal estate tax was paid before the property was distributed to the beneficiaries, they would never be in the position of having received that portion of the asset which was used to pay the tax. This

court rejected that theory, noting that it had previously held that the inheritance tax is imposed upon the legal power to transmit as well as upon the right to receive the property.

In *Toomey,* another theory was advanced to support the contention that federal estate taxes should be deductible. It was argued that such taxes constitute an encumbrance upon the assets of the estate, under RCW 11.44.065. We said:

> A federal estate tax lien under present statutes does not come into existence until death. Thus, the federal estate tax was neither deductible as an existing lien, encumbrance or secured charge against any of the items of property, under RCW 11.44.065, which provides for the deduction of liens and encumbrances burdening the assets on the date of death, nor as one of the decedent's debts owing during her lifetime as specified in RCW 83.04.013, nor included as one of the enumerated expenditures arising from the costs of funeral, burial and administration also set forth in RCW 83.04.013.

*In re Estate of Toomey, supra* at 919.

Just as in the case of the federal estate tax, there was no federal lien for income taxes of the beneficiaries which, prior to the death of Phillips, attached to the assets transmitted here.

The executrix cites two Pennsylvania cases in which the courts of that state sustained the right to deduct income taxes payable upon assets which constituted "income in respect of a decedent" under section 691 of the Internal Revenue Code. These are *Tench Estate,* 23 Pa. Fiduc. 478 (Pa. Super. C.P. 1973) and *Rose Estate,* 24 Pa. Fiduc. 352 (Pa. Super. C.P. 1974). The latter case was affirmed by a majority of the Pennsylvania Supreme Court in *Estate of Rose,* 465 Pa. 53, 348 A.2d 113 (1975).

The Pennsylvania courts in those cases were convinced that the legislature did not intend to impose what they characterized as a "tax upon a tax", although the opinions do not reveal the statutory language upon which this

assumption was based. There was no discussion of the concept of market value, as applied to such assets, except in the dissenting opinion in *Estate of Rose, supra.* The majority opinion in that case simply assumed that income taxes owed by the owner affect the market value of an asset.

In the neighboring state of New Jersey, the allowance of a deduction for income taxes payable by a widow on pension benefits was denied. *In re Estate of Romnes,* 148 N.J. Super. 401, 372 A.2d 1115 (1977), *aff'd,* 79 N.J. 139, 398 A.2d 543 (1979). The New Jersey court, examining the inheritance tax statutes, which are very similar to ours, could find no basis for such a deduction.

■ These are the only cases which we have found upon the subject. The decision of the New Jersey court is more in accord with the interpretation which we have placed upon our own statutes than are those of Pennsylvania. With respect to the objection that the denial of a deduction for federal taxes results in a tax upon a tax, an objection which carried great weight in Pennsylvania, we said in *In re Estate of Carlson, supra* at 366:

> The contention that the sole legatee in this case is being deprived of property without due process of law and is being denied equal protection of the law in contravention of the Fourteenth Amendment is answered in three decisions of the United States Supreme Court: *Stebbins v. Riley,* 268 U. S. 137, 69 L. Ed. 884, 45 S. Ct. 424, 44 A. L. R. 1454; *Frick v. Pennsylvania,* 268 U. S. 473, 69 L. Ed. 1058, 45 S. Ct. 603, 42 A. L. R. 316; *Irving Trust Co. v. Day,* 314 U. S. 556, 86 L. Ed. 452, 62 S. Ct. 398, 137 A. L. R. 1093.
>
> In the *Frick* case, the court described the legal relationship between a state inheritance tax and the federal estate tax and held that neither the state nor the federal government, in imposing its own tax, was under any constitutional obligation to make any deduction on account of the other's tax.

The executrix' chief reliance is placed upon the case of *In re Estate of Birkeland,* 56 Wn.2d 441, 353 P.2d 667 (1960), and it is from that case that she has derived her theory that

the income tax obligation reduces the value of these assets *to the individual beneficiaries* and thereby reduces its taxable value.

*Birkeland* involved the valuation of a partnership interest. The partners had entered into an agreement that upon the death of one of them, his widow should have an option to purchase his interest at book value. When Birkeland died, his widow purchased his interest pursuant to the agreement, and it was contended by his estate that this price was the proper value by which to measure the inheritance tax. We sustained the tax commission's contention that the interest should be valued at its market value in the hands of the beneficiary, rather than its value to the estate.

In the course of the opinion, it was said that only such matters "as affect the value of the property to the legatees are relevant to inheritance tax appraisal." *Birkeland,* at 445. It is this language to which the executrix here attaches great significance. She contends that any factor which affects the property's value *to her* is to be taken into consideration in valuing the asset.

We need not embark upon an exploration of the theory that the obligation to pay taxes upon an asset affects its value to the owner. Reading the *Birkeland* case in its entirety, it is manifest that we were speaking in terms of *market value* in the hands of the legatee. On page 443 of the opinion there appears this sentence: "Appellant claims that the measure of value is the fair market value of the property to the legatees, while the respondent administrator contends that the fair market value to the estate is the proper measure." Thus, there was no dispute that the market value of the partnership was the proper measure of the tax.

The rationale of *Birkeland* is subject to criticism.[1] Market value can ordinarily be determined without taking into account the actual circumstances of the owner. It is defined

---

[1]It has in fact been criticized. *See* Note, *State and Local Taxation,* 39 Wash. L. Rev. 266, 274 n.46 (1964). The notewriter appears to have misunderstood the

as the price that a well informed buyer, willing but not obliged to buy would pay, and which a well informed seller, willing but not obliged to sell, would accept for the property. *State v. Rowley,* 74 Wn.2d 328, 444 P.2d 695 (1968). That a binding contract to sell an asset does not necessarily determine its value is well recognized. *See Valuation of property for purposes of estate, succession, or gift tax as affected by contract or bylaw specifying price at which property may or must be sold, purchased, or offered,* Annot., 5 A.L.R.2d 1122 (1949).

In *In re Estate of Cowles,* 36 Wn.2d 710, 219 P.2d 964 (1950), this court had before it the same kind of problem which was involved in *Birkeland.* There the question was whether a contract to sell corporate stock in a family business to a member of the family afforded a proper criterion for determining the market value of the asset for inheritance tax purposes. Approaching it in a more direct manner than was done in *Birkeland,* we observed that, as a general rule, intrafamily sales do not give a dependable measure of value because they are not sales in a free and open market. It was held that a price fixed in a contract given by a father to his son to purchase stock at a future time was not binding on the appraiser of the father's estate in fixing the full and fair market value of the stock at the time of death. Had this case come to this court's attention when it was deciding *Birkeland,* the result of the latter case could have been reached by a less tangential course of reasoning, and there would have been no occasion for the confusing language upon which the executrix here relies.

---

holding of the case, however, since he reports that the decision uses the distinction between a tax on the right to transmit property and a tax on the right to receive property in a manner adverse to the tax commission. Had he perceived that the holding was favorable to the commission, he would have seen that there was no reason to be surprised (as he appears to have been) that the legislature did not see fit to "overrule" it.

In any event, *Birkeland* does not support the proposition that a personal obligation of the seller, which does not constitute an encumbrance upon the property itself, is a factor affecting market value. It is undisputed here that the income taxes which became due on the assets transmitted under the trust agreement were personal obligations of the beneficiaries. It is inconceivable that any of them would have been willing to sell those assets at a price reduced by the amount of the income tax obligations which they owed, and the executrix does not ask us to believe that such an imprudent seller is likely to be found in the marketplace.

In *In re Kent,* 77 Wn.2d 499, 463 P.2d 132 (1969), an eminent domain case, we said that incidental expenses such as attorney fees and witness fees incurred in connection with the ownership of land, which do not affect its value, are not included in arriving at fair market value. Just as such expenses do not increase the market value of an asset, personal obligations of the owner of an asset, which are incurred by reason of ownership but which are not encumbrances upon that asset, do not reduce its market value.

We note that these income tax obligations did not exist on the date of Phillips' death, the date with respect to which market value is to be determined. The lower court was mindful of this, but decided that the obligations were nevertheless an encumbrance because it was virtually certain that when the installments were paid, each recipient would become obligated to pay income taxes with respect to it. However, this certainty did not convert the obligation from a personal one of the recipient to an encumbrance upon the asset. And it had no effect whatsoever upon the asset's market value. For these reasons, such liabilities of the recipients cannot be taken into account in determining the value for inheritance tax purposes.

The judgment is reversed and the cause remanded with directions to confirm the findings of the director of the

Inheritance Tax Division, Department of Revenue, fixing the tax due, and to order payment of the tax accordingly.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.