CASH LOAN COMPANY, INC., Respondent, v. BOSER, Appellant.

*March 1—April 11, 1967.*

412

414

"  .  .  .

For the appellant there were briefs by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *Richard S. Bolte* and *Weber & Bolte* of counsel, all of Wausau, and oral argument by *Richard S. Bolte.*

For the respondent there was a brief and oral argument by *Jerome A. Maeder* of Wausau.

HANLEY, J.  There are two issues presented by this appeal:

1. Is the trial judge's finding that there was no purchase of the rotodrill by Bembinster contrary to the great weight and clear preponderance of the evidence?

2. Assuming that Bembinster did not own the property but was in possession by consignment from Neuheisel,

does Cash Loan's unperfected security interest have priority over a purchaser who took with actual knowledge of the mortgage?

*Alleged Purchase by Bembinster.*

Bembinster claimed that he purchased the rotodrill from Neuheisel in September of 1964, thereby making ineffective any subsequent security interest placed on the machine by Neuheisel. Neuheisel, on the other hand, contended at trial that Bembinster had possession of the machine under an oral consignment agreement by which Bembinster was to sell the machine on his behalf. The trial judge made the following finding on this point:

"7. That the Court believes the plaintiff's witnesses' testimony and does not believe that Norbert Neuheisel sold the said drill and drill steels to the person from whom the defendant claims he obtained title to said property."

This case was tried to the judge without a jury. Under such circumstances, this court has set forth the following standard to be applied in reviewing the judge's findings:

"Since the trial court tried the case without a jury, its findings will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence and it is not necessary the evidence in support of the findings constitutes the great weight or clear preponderance of the evidence. Nor is it sufficient that there is evidence to support a contrary finding. To command a reversal, such evidence although sufficient to support a verdict must constitute the great weight and the clear preponderance of the evidence. . . ." *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. (2d) 419, 421, 141 N. W. (2d) 212.

See also *Delap v. Institute of America, Inc.* (1966), 31 Wis. (2d) 507, 509, 143 N. W. (2d) 476; *Krueger v. Steffen* (1966), 30 Wis. (2d) 445, 448, 141 N. W. (2d) 200.

There was considerable conflicting testimony at the trial. As noted above, Bembinster claimed that he purchased the rotodrill from Neuheisel in September of 1964. Bembinster testified that he paid $250 for the machine, but both Neuheisel and Fremont Woller, the manager of Cash Loan, testified that the machine was worth approximately $6,250. The bill of sale that Bembinster offered as proof of the sale did not state that the $250 payment was for the rotodriller. The bill of sale states:

"September 15, 64
"Received $250.00 deposit on scrap items at Grandview Quarries. Balance $500.00

/s/ Norbert Neuheisel"

Neuheisel testified that the $250 was for the sale of scrap by him to Bembinster rather than for the sale of the rotodrill.

Donald McNabb, who was employed by Bembinster to move the machine from a quarry to Bembinster's lot, testified that Neuheisel told him it belonged to Bembinster. On the other hand, Erwin Woller, the secretary of Cash Loan, testified that he visited Bembinster's yard with Neuheisel several times and that Bembinster at no time claimed to own the machine even when told that Neuheisel had a chance to sell it. Erwin Woller testified that at one time Bembinster said he would not let the drill leave his yard until a $238 bad check of Neuheisel's was made good, but that with this exception Bembinster did not object to suggestions that the machine might be sold by Neuheisel and removed.

This court frequently has noted that the trier of fact determines the credibility of the witnesses and the weight to be given their testimony and that conflicts in the testimony are to be resolved by the trier of fact. *State v. Conway,* ante, p. 76, 148 N. W. (2d) 721; *Estate of Dobrecevich* (1962), 17 Wis. (2d) 1, 6, 115 N. W.

(2d) 597; *Estate of Kaiman* (1961), 13 Wis. (2d) 201, 205, 108 N. W. (2d) 379.

This court said in *Estate of Larsen* (1959), 7 Wis. (2d) 263, 273, 96 N. W. (2d) 489:

". . . A finding of fact of a trial court made upon conflicting evidence should not be set aside on review if a judicial mind could, on due consideration of the evidence as a whole, reasonably have reached the conclusion of the court below."

We believe the trial court's finding is supported by the great weight and clear preponderance of the evidence.

*Effect of the Unperfected Mortgage on Boser.*

The defendant contends that even if this court finds that Bembinster did not purchase the machine from Neuheisel in 1964, Boser still is entitled to the property in view of Neuheisel's own contention at the trial that Bembinster had possession of the machine on consignment to sell it for Neuheisel.

The trial judge made an express finding of fact that the appellant Boser had actual knowledge of Cash Loan's chattel mortgage on March 19, 1965, before he attempted to purchase the rotodrill from Bembinster, and this finding is not contrary to the great weight and clear preponderance of the evidence. Fremont Woller testified that he told Boser in the latter part of April or early part of May, 1965, that Cash Loan had a mortgage on the rotodrill, and this fact is uncontradicted in the record. Boser himself does not deny that Woller informed him of the mortgage on the rotodrill, but only indicates that he does not remember whether Mr. Woller mentioned the word "mortgage" in their conversation.

The primary question presented, then, is whether the fact that Boser had actual knowledge of Cash Loan's mortgage precludes him from claiming priority even

though the mortgage was unperfected because of the lack of timely filing. A preliminary question, however, is whether the Uniform Commercial Code or precode law is applicable to the events at bar.

Sub. (1) (a) of sec. 401.110, Stats., provides that transactions entered into before July 1, 1965, are governed by precode law. All of the crucial events involved here occurred before that date. The mortgage was taken on March 19, 1965; Boser discovered the existence of the mortgage in April, May or June of 1965.

Sub. (1) (b) of sec. 401.110, Stats., provides that (1) (a) does not apply to the perfection of a security interest which was perfected on July 1, 1965, but concededly the security interest was not perfected by that date. Sub. (4) of sec. 401.110 describes how a security interest which is not perfected by July 1, 1965, may thereafter become perfected, but the section is of no assistance in determining whether the code or precode law is applicable where actual knowledge of an unperfected security interest is obtained before the effective date of the code.

The applicable precode provision is sec. 241.08, Stats. 1963, and under this section it seems clear that a purchaser taking property with actual knowledge of a preexisting mortgage takes subject to the mortgage. At one time, the predecessor of sec. 241.08 was interpreted to mean that persons with actual knowledge of a mortgage take free and clear of the mortgage unless it was recorded. *C. I. T. Corp. v. Wallerman* (1943), 242 Wis. 287, 7 N. W. (2d) 884; *First Nat. Bank v. Biederman* (1912), 149 Wis. 8, 134 N. W. 1132; *Parroski v. Goldberg* (1891), 80 Wis. 339, 50 N. W. 191. This result, however, was specifically changed by the legislature in 1949 by the addition of the italicized words of the following portion of sec. 241.08:

"**Chattel mortgages to be filed or property delivered; when wife must join in executing.** No mortgage of personal property shall be valid against any other person

than the parties thereto *or persons having notice thereof,* unless the possession of the mortgaged property be delivered to and retained by the mortgagee or unless the mortgage be filed as provided in section 241.10, except when otherwise directed in these statutes. . . ." Ch. 429, Laws of 1949. (Emphasis supplied.)

As amended, sec. 241.08, Stats., provides without ambiguity that purchasers having actual knowledge of a prior mortgage take subject to the mortgage regardless of whether the mortgage is filed.

The same result obtains under the Uniform Commercial Code. Sec. 409.301, Stats., describes the persons who take priority of unperfected security interests. Sub. (1) (a) of that section which is applicable here refers to sec. 409.312, which by sub. (1) (e) refers to sec. 409.307, on the rules of priority for buyers of goods. Under sec. 409.307 (1), Boser would take free of the security interest created by Neuheisel, even though Boser knew of the existence of the security interest *if he were a buyer in the ordinary course of business.* However, a buyer in the ordinary course of business is defined by sec. 401.201 (9), as one who buys "in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods." Boser here was put on notice by statements of the representatives of Cash Loan that he would be violating the ownership rights of Cash Loan if he purchased the rotodrill from Bembinster; hence he cannot be considered a "buyer in ordinary course of business," and his rights in the machine are subject to the prior mortgage of Cash Loan.

Defendant contends for the first time in his reply brief that the doctrine of laches prevents the plaintiff from asserting his security rights in the rotodrill because it permitted Bembinster to retain possession of the property without filing a chattel mortgage to put the public on notice of this claim.

We do not believe this contention has any merit under the facts of this case. The defendant Boser had actual knowledge of a prior security interest. If defendant did not believe Cash Loan's claim that it had a prior mortgage, he could have requested production of the document by Cash Loan. The testimony discloses that Boser did take the precaution to question Bembinster's title prior to his purchase. Testimony further disclosed that Boser relied upon Bembinster's statement that he owned the equipment and Cash Loan had no interest. He chose to rely on Bembinster's statement even though he had knowledge of Cash Loan's claim.

The disadvantage complained of by Boser as a result of Cash Loan's failure to file its mortgage timely was the result of his own neglect.

We conclude that there is ample evidence to support the trial court's findings that Neuheisel did not sell the rotodrill and drill steels to Bembinster, that the defendant Boser had actual knowledge of the chattel mortgage before the attempted purchase from Bembinster and that the defendant failed to prove his counterclaim. We conclude further that under sec. 241.08, Stats. 1963, or sec. 401.110, Stats. 1965 (Uniform Commercial Code), the plaintiff is entitled to judgment confirming possession and title to the property in question.

*By the Court.*—Judgment affirmed.

HANSEN, J., took no part.