## Bowman v. Boucher

*Charles A. Haddad,* for plaintiff.
*David H. Roland,* for defendant.

ESHELMAN, *P.J.,* June 27, 1979—Plaintiff, Clarence B. Bowman, filed a complaint in equity

seeking to have conveyed to him an A-1-S 20 gauge Parker shotgun presently in possession of defendant, William Boucher. Hearing on the matter was held before the chancellor on June 13, 1979. Additional defendants, Michael J. Perugini and Michael J. Perugini, Inc., were eliminated as parties to the action by agreement of counsel for all parties at pretrial conference on June 7, 1979.

## 1. STATEMENT OF ISSUES

a. Were Michael J. Perugini and Michael J. Perugini, Inc. (hereinafter Perugini) engaged in the business of selling guns in March, 1976?

b. Did plaintiff acquire ownership rights in a certain shotgun as buyer from Perugini on March 6, 1976?

c. Was defendant a buyer in good faith and without knowledge that the sale of the shotgun to him on or about March 10, 1976 by Perugini for $13,600 was in violation of any ownership rights of plaintiff?

d. Should the court require defendant to convey the shotgun to plaintiff as owner upon payment by plaintiff to defendant of the sum of $13,600?

## 2. FINDINGS OF FACTS

Plaintiff is an adult individual residing at 37 Decatur Road, Havertown, Pa.; defendant is an adult individual residing at R. D. #3, Box 17, Kennett Square, Pa. In March, 1976, Perugini was a dealer engaged in the business of selling guns in Reading, Berks County, Pa. On March 6, 1976 Perugini had on consignment at his place of business in Reading, Pa., an A-1-S 20 gauge Parker shotgun, the purchase and sale of which plaintiff and Perugini

agreed to at a price of $12,000. Plaintiff paid $2,000 on account in cash on March 6, the balance of $10,000 to be paid on March 10, 1976 by plaintiff to Perugini who would hold the shotgun until payment of the balance, and for which transaction Perugini gave plaintiff a receipt worded "3/6/76 Received from C. Bowman $2,000. for Parker A-1-S (three letters not legible) 20 ga. #170,007 Bal. $10,000" (Exhibit 1 of 6/13/79).

Prior to March 6, 1976 defendant was advised by Perugini that Perugini had the shotgun for sale. On March 7 at Pikeville Sportsmen's Club in the presence of defendant, Perugini announced, "I sold the shotgun. The shotgun's gone. I sold it for $12,000. Can you imagine anybody paying $12,000 for a shotgun?" The next day (March 8) defendant called Perugini by telephone and inquired if the shotgun was possibly still for sale and was told that Bowman (plaintiff) had made a deposit and the gun was tied up. On March 9 in another telephone conversation Perugini told defendant that defendant may come up that evening to Reading to see the shotgun. On that evening of March 9 defendant came to Perugini's residence in Reading to see the shotgun and was advised by Perugini, "I have already sold the gun to Mr. Bowman (plaintiff) for $12,000 and I would like to . . . get more out of the gun." Perugini told defendant that Bowman made a deposit for which Bowman was given a receipt, to which defendant replied he wanted the gun and would buy it for more money than Bowman. Perugini told defendant that he (Perugini) could get out of the deal with Bowman and that defendant would be able to purchase the gun, that Bowman was supposed to come back and had been given an amount of time and he didn't come back so Perugini felt he could

sell to the defendant. Perugini told defendant that Bowman had paid $2,000 on account of the gun and defendant replied, "Well, we'll worry about that later." Defendant thereupon gave Perugini his check postdated March 11 for $13,600 and defendant left Perugini's residence with the shotgun. Defendant never made inquiry of Bowman as to any sale of the shotgun to Bowman.

On March 10, 1976 plaintiff drew $10,000 from his bank account for the balance of the purchase price, called Perugini late that afternoon and was told by Perugini that the owner wanted to retain the gun and to save plaintiff the trouble of coming for return of the deposit of $2,000 Perugini would send plaintiff a check; Perugini's check dated March 11 for $2,000 was received by plaintiff but plaintiff did not cash it because he felt he had a valid sales agreement, and thereafter filed an action against Perugini.

Perugini called defendant by telephone, told defendant that Perugini was in trouble because of threatened court action and requested defendant to follow through with some things to consummate the sale and make it valid including a bill of sale, and a firearms report on which each of them must insert some information. Just prior to the required appearance of Perugini in court on April 7, 1976, Perugini made up a receipt to defendant predated March 11 for a price of $12,700 and six percent tax of $767, total $13,462 and Perugini and defendant met in West Chester where both of them completed the Firearms Transaction Record form and predated it March 11.

Defendant has possession of the shotgun which is a unique item of personal property.

Plaintiff is willing to pay defendant $13,600 (the amount paid by defendant to Perugini) upon delivery of the shotgun by defendant to plaintiff. (Plaintiff's pretrial memorandum, paragraph 6).

## 3. DISCUSSION

Defendant argues that section 2-403 of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §2-403, prevents recovery by plaintiff in this action.

The pertinent subsections of section 2-403 provide as follows:

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

Section 1-201(9) of the Uniform Commercial Code, 12A P.S. §1-201(9), states that: "'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker."

Under section 1-201(25) of the Uniform Commercial Code, 12A P.S. §1-201(25): "A person

'knows' or has 'knowledge' of a fact when he has actual knowledge of it."

During the time the shotgun was in Perugini's possession, the evidence shows Perugini was a dealer in the sale of guns. Therefore, for purposes of section 2-403 he was a "merchant" as defined in section 2-104(1) of the Uniform Commercial Code, 12A P.S. §2-104(1).

The evidence shows that on Saturday, March 6, Perugini accepted plaintiff's offer to purchase the shotgun for $12,000. Plaintiff gave a down payment of $2,000 with the balance of $10,000 to be paid on Wednesday, March 10. A receipt was given by Perugini. This is sufficient to show agreement between Perugini and plaintiff resulting in a contract of sale. See 12A P.S. §2-204(1).

Pursuant to section 2-401(3)(b) of the Uniform Commercial Code, 12A P.S. §401(3)(b), title to the shotgun passed at the time of agreement because there was no explicit agreement to the contrary, the shotgun was identified, shipment of the shotgun was not contemplated and no documents of title were to be delivered. See Uniform Commercial Code §2-401, Comment 4. Therefore, beginning March 6 plaintiff had ownership rights in the shotgun.

Entrustment under section 2-403(2) includes "[a]ny entrusting of possession of goods" and is further defined in section 2-403(3) as including "any delivery and any acquiescence in retention of possession." As a result, entrustment includes the situation where a buyer permits his purchased property to remain in the possession of the merchant-seller: See 2 Anderson, Uniform Commercial Code §2-403:19. Since Perugini, a gun merchant, continued to possess the gun following the sale to plaintiff, an entrustment was created.

However, defendant's defense under section 2-403 fails because defendant was not a buyer in the ordinary course of business. Defendant was told by Perugini on Sunday, March 7, that the shotgun had been sold. The following day, Monday, defendant was told by Perugini that the gun was "tied up." On Tuesday, March 9, Perugini told defendant that the shotgun was sold, but that he would like to get more money for it. Therefore, at the time defendant purchased the shotgun he had actual knowledge of a third party's ownership rights in it. That Perugini "felt" he could sell to defendant does not lessen the effect of that knowledge. See Cash Loan Co., Inc. v. Boser, 34 Wis. 2d 410, 149 N.W. 2d 605 (1967). Defendant's actual knowledge of the prior sale prevents him from being a buyer in the ordinary course of business as defined in the Uniform Commercial Code.

## 4. CONCLUSIONS OF LAW

1.  At all times relevant to this action, Perugini was a merchant dealing in the sale of guns.

2.  Plaintiff purchased the A-1-S 20 gauge Parker shotgun and acquired ownership rights therein as a result of the contract of sale with Perugini.

3.  Plaintiff "entrusted" the shotgun to Perugini.

4.  Perugini resold the shotgun to defendant who was not a buyer in the ordinary course of business because he had actual knowledge that his purchase was in violation of a third party's ownership rights.

5.  The A-1-S 20 gauge Parker shotgun is a unique item of personal property.

6.  Defendant has possession of the shotgun.

7.  Plaintiff is entitled to possession of the shotgun upon payment of $13,600 to defendant.

## DECREE NISI

And now, June 27, 1979, it is ordered and decreed that defendant convey to plaintiff possession of the A-1-S 20 gauge Parker shotgun, and that plaintiff pay defendant $13,600 upon delivery of said shotgun; exceptions shall be filed within ten days after notice of the filing of this adjudication, otherwise this decree shall become absolute as of course.

ESHELMAN, *P.J.*, January 25, 1980—We have before us fourteen exceptions to the adjudication and decree nisi entered in this matter on June 27, 1979, at which time the chancellor ruled in favor of plaintiff and ordered that defendant convey to plaintiff possession of an A-1-S 20 gauge Parker shotgun and that plaintiff pay defendant $13,600 upon delivery of said shotgun.

The facts of the case are fully set forth in said adjudication in Bowman v. Boucher, _____ D. & C. 3d _____, 72 Berks 79 (1979). We adopt those findings of fact and incorporate them by reference herein.

Briefly, on March 6, 1976 plaintiff agreed to purchase for $12,000 the said A-1-S 20 gauge Parker shotgun from Michael J. Perugini (hereinafter Perugini), a dealer in the business of selling guns. At that time plaintiff paid $2,000 on account in cash, and the balance of $10,000 was to be paid on March 10, 1976. Perugini was to retain possession of the shotgun until payment of the balance. However, on March 9 Perugini sold the gun for $13,600 to defendant who took immediate possession. The following day, March 10, Perugini told plaintiff that the shotgun was no longer for sale because the owner wanted to retain it. Thereafter, plaintiff brought this action seeking equitable relief.

Defendant's exceptions, as briefed and argued, can be distilled into three issues: (1) whether plaintiff had ownership rights in the shotgun at the time defendant purchased it; (2) whether defendant had actual knowledge that his purchase was in violation of those ownership rights, if the rights existed; and (3) assuming defendant must convey possession of the shotgun to plaintiff, whether plaintiff should not also be required to pay interest in addition to the $13,600.

Defendant argues that section 2-401(2) of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §2-401(2),* is controlling as to when title in the shotgun would have passed to plaintiff. The subsection states, inter alia:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place. . . ."

As a result, defendant contends that title to the shotgun never passed to plaintiff because the gun was never physically delivered to him. Therefore, defendant's argument concludes that plaintiff never had any ownership rights in the shotgun.

However, the chancellor determined that section

*Effective January 1, 1980, the text of the Uniform Commercial Code was transferred to the Consolidated Statutes, 13 Pa.C.S.A. §1101 et seq., without change in substance: Act of November 1, 1979, P.L. 255. However, because the law is not retroactive and to maintain uniformity with the earlier adjudication, the previous form of citations will be used in this opinion.

2-401(3) was applicable and controlling. It provides:

"Unless otherwise explicitly agreed where delivery is to be made without moving the goods,
"(a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
"(b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."

In making the adjudication the chancellor also relied upon comment 4 to the Uniform Commercial Code, §2-401, which states the following:

"The factual situations in subsections (2) and (3) upon which passage of title turn actually base the test upon the time when the seller has finally committed himself in regard to specific goods. Thus in a 'shipment' contract he commits himself by the act of making the shipment. If shipment is not contemplated subsection (3) turns on the seller's final commitment, i.e., the delivery of documents or the making of the contract."

Therefore, pursuant to section 2-401(3)(b), the chancellor concluded that title to the shotgun passed at the time of the agreement between plaintiff and Perugini because there was no explicit agreement to the contrary, the shotgun was identified, shipment of the shotgun was not contemplated and no documents of title were to be delivered.

There appear to be no Pennsylvania cases on point. However, decisions in other jurisdictions support the chancellor's conclusion. In Interna-

tional Harvester Credit Corp. v. Associates Financial Services Co., Inc., 133 Ga. App. 488, 211 S.E. 2d 430 (1974), the court, relying on subsection (3) and comment 4, found that title to purchased trucks passed at the time of contracting because no documents were to be delivered, the trucks were identified to the contract, it was not otherwise explicitly agreed and the buyer was to accept delivery of the trucks at the seller's place of business.

Likewise, in Sheeskin v. Giant Food, Inc., 20 Md. App. 611, 318 A. 2d 874, 884 (1974), affirmed 273 Md. 592, 332 A. 2d 1 (1975), the court in dictum interpreted subsection (2) to apply only in situations where the seller has a duty to deliver the purchased goods to a location other than his place of business. Also, in dicta, the court in Mechanics National Bank of Worcester v. Gaucher, ____ Mass. App. Ct. ____, 386 N.E. 2d 1052 (1979), distinguished between subsections (2) and (3) on the basis of whether or not the goods would require special handling to enable the buyer to take possession; if the buyer can drive away with the goods, subsection (3) applies.

In the instant action, physical delivery of the shotgun was to be made at the dealer's place of business and special handling was not necessary. Furthermore, as explained by comment 4, if the test is at what point Perugini finally committed himself with regard to the shotgun, there is no question he committed himself by the agreement he made with plaintiff.

Therefore, the chancellor properly concluded that title to the shotgun had passed to plaintiff and that he has ownership rights therein.

Secondly, defendant argues that under the facts as found by the chancellor, defendant could not have had actual knowledge that his purchase of the

shotgun was in violation of plaintiff's ownership rights.

To prevail over plaintiff's ownership rights in the shotgun it is necessary that defendant have been a buyer in the ordinary course of business: 12A P.S. §2-403(2). As defined by section 1-201(9) of the Uniform Commercial Code, 12A P.S. §1-201(9), "'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker."

Pursuant to section 1-201(25), "A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it." Accordingly, if defendant did purchase the shotgun in good faith and without actual knowledge that doing so violated plaintiff's ownership rights, he would have been a buyer in the ordinary course of business.

In reviewing the findings, it is important to note that the trial judge, sitting in equity as a chancellor, serves as the factfinder. Therefore, the credibility of the witnesses and the weight to be accorded their testimony are matters within his discretion. See Lawner v. Engelbach, 433 Pa. 311, 249 A. 2d 295 (1969).

As found by the chancellor, defendant learned from Perugini on Sunday, March 7, 1976, that the A-1-S 20 gauge Parker shotgun had been sold. One day later, on March 8, defendant inquired of Perugini about the availability of the shotgun but was told that Bowman, the plaintiff herein, had made a deposit and that the gun was "tied up." Not willing to give up, on March 9 defendant again talked by

telephone with Perugini, who told defendant that he could come to Reading to see the shotgun. When defendant arrived at Perugini's residence later that same evening, Perugini told him, "I have already sold the gun to Mr. Bowman for $12,000 and I would like to . . . get more out of the gun." Defendant replied that he wanted the gun and would buy it for more money than Bowman.

Having been told on three different occasions that the shotgun had been sold, it is clear that at the time of defendant's purchase he had actual knowledge of plaintiff's ownership rights in the shotgun. Defendant engaged in a persistent and concentrated effort to obtain possession of the coveted firearm, and he successfully enticed Perugini with the offer of more money. Nevertheless, defendant points to the finding that Perugini said he "felt" he could sell to him because plaintiff had not paid the balance by the agreed time. However, the balance was not due from the plaintiff until the following day, March 10. Although defendant contends he had the right to rely on Perugini's statement of feeling, why was defendant's check dated March 11 when the sale had actually taken place on March 9 if not to make it appear that the sale had occurred at a time after plaintiff was to pay the balance on March 10? In view of all of the information furnished to defendant concerning the sale to plaintiff, there is no question that defendant acted with actual knowledge that the gun had already been sold. The evidence also shows that defendant's purchase was not made in good faith, the other prerequisite for being a buyer in the ordinary course of business: 12A P.S. § 1-201(9) and (19).

Therefore, even though plaintiff had entrusted the shotgun to Perugini, the chancellor correctly

concluded that defendant was not a buyer in the ordinary course of business to whom plaintiff's ownership rights could be transferred.

Finally, defendant argues that when possession of the shotgun is conveyed to the plaintiff, equity demands that plaintiff pay defendant interest in addition to the decreed $13,600.

Pa.R.C.P. 1518 requires that exceptions taken to a decree nisi be set forth precisely, and that matters not covered by the exceptions are deemed waived: Estate of Rose, 465 Pa. 53, 348 A. 2d 113 (1975). Defendant's request for interest was not precisely set forth in the exceptions.

Not only is this the first time defendant has made the request for interest, but it is contrary to the position asserted by defendant earlier in this proceeding. Defendant's pretrial memorandum states, "If Plaintiff's requested relief is granted, . . . Plaintiff should be required to pay the Defendant the sum of $12,000.00" Plaintiff's pretrial memorandum states, "Plaintiff will agree to reimburse the Defendant the sum of $13,600.00 should the Court direct the Defendant to transfer the aforesaid shotgun to the Plaintiff." It was on the basis of the latter statement that the chancellor made a finding of fact with regard to plaintiff's paying the amount of $13,600. Defendant did not take an exception to that finding.

However, even assuming that the objection has not been waived, the law provides no foundation for granting the requested interest. As his only basis for the claim, defendant argues that by analogy the decision in Witmer v. Delone, 225 Pa. 452, 74 Atl. 347 (1909), requires the award of interest on the $13,600 sum.

The facts of Witmer evolved from an orphans'

court sale of real estate by the plaintiffs to the defendant who made a down payment and took immediate possession. On the date the balance of payment was due, plaintiffs tendered defendant a deed for the premises. Defendant refused to accept the deed because of a question concerning the title, and he did not pay the balance. Almost two years later defendant petitioned to set aside the sale, but the lower court found that the title was sufficient. On appeal, the Pennsylvania Supreme Court affirmed and held that defendant was also liable for interest on the unpaid purchase money from the date the deed was first tendered. The court concluded that there were no facts from which any equities arose to the benefit of the defendant, and stated, "It is enough to know that plaintiffs stand clear of all charge of bad faith in connection with the matter." Witmer v. Delone, supra at 456, 74 Atl. at 348.

In the instant action defendant does not similarly stand clear of any charge of wrongdoing, and equities do arise in favor of plaintiff. Plaintiff has been wrongfully denied possession of a shotgun in which he has ownership rights because of the intentional and knowing conduct of defendant.

Furthermore, in Witmer, defendant possessed both the land and the unpaid purchase money. For that period of nearly two years plaintiffs drew no benefits from the land for which they held the title. The award of interest was necessary to compensate them. In the instant action defendant may have been prevented for almost four years from selling the shotgun to realize a tangible profit, but in the meantime he has enjoyed sole possession of a unique item of personal property and the resulting intangible profit that accrues from such a posses-

sion. To further reward him for his violative acts would be highly inequitable. The payment of interest by plaintiff will not be decreed.

Accordingly, defendant's exceptions are dismissed in whole, and the decree nisi is affirmed.

### ORDER

And now, January 25, 1980, it is hereby ordered that the exceptions be denied and dismissed and that the decree nisi be confirmed.